RICHMOND and Others *v.* MARSTON and Others.

RICHMOND
*v.*
MARSTON.

*A.* and *B.* in *August*, 1847, entered into partnership in merchandising and milling, and became joint owners of mill property. In *October*, 1848, *A.* filed his bill for a dissolution of the partnership, and a receiver was appointed. *B.* having purchased a stock of goods for the firm on his individual credit, it was ordered by the Court that the receiver, on delivering one half of such goods to *A.*, should take of him notes with security for the use of the vendors of the goods ; which was done. The receiver, having sued on these notes, recovered a judgment; but prior to the recovery of this judgment, *A.* had fraudulently conveyed away his interest in the mill property. Execution was, however, levied upon it, and *B.* became the purchaser on sheriff's sale, and paid the amount of his bid. Suit by *B.* to set aside the fraudulent conveyance made by *A.* Decree setting aside the conveyance of *A.*, and also the sheriff's sale to *B.*, and that *B.* be subrogated to the rights of the receiver to the amount of his bid, &c.

*Held,* that it is only in cases where the person paying the debt, stands in the relation of a surety, or is compelled to pay in order to protect his own interests, or in virtue of legal process, that equity substitutes him in the place of the creditor.

*Held,* also, that a stranger paying the debt of another will not be substituted to the creditor's rights, in the absence of an express agreement.

*Held,* also, that the position of *B.* was that of an ordinary vendee at sheriff's sale, who purchases voluntarily, and that the amount he paid to the sheriff operated as a discharge, *pro tanto,* of the judgment, and hence there could be no substitution.

*Saturday,*
*December* 1.

APPEAL from the *Elkhart* Circuit Court.

DAVISON, J.—Suit in chancery, instituted in *January*, 1851, by *Nelson E. Marston* against *Danforth Richmond*, *Clarissa Richmond*, his wife, *Jared Brook* and *Eliakim Briggs*. During the pendency of the suit, *Marston* died, and the action was revived in the name of *Phebe Marston*, his widow, and *Nelson* and *Charles Marston*, his heirs at law. The bill charges, *inter alia*, as follows : In *August*, 1847, *Danforth Richmond* owned, in fee, a flouring mill and warehouse, situate in *St. Joseph* county ; and on the 25th of that month he and *Nelson E. Marston*, by written contract, became partners in selling store-goods and in the milling business ; *Richmond* having conveyed to *Marston* one half of the mill property, estimated at $11,000, and *Marston* having put store-goods and other property into the concern, to equal the esti-

mated value of the mill and warehouse. In *October*, 1848, Richmond filed a bill, in the *St. Joseph* Circuit Court, for a dissolution of the partnership and a winding up of its affairs. The Court, in that suit, ordered the partnership to be dissolved, and appointed a receiver to take charge of its effects. And, *Marston* having bought a stock of goods in the city of *New York*, for the use of the firm, for which he had become individually responsible, it was ordered that the receiver, on delivering one half of the goods, so purchased, to *Richmond*, should require of him promissory notes, with security, payable to the receiver, for the use of the merchants from whom the said goods were purchased. The receiver thus appointed, having entered upon the duties of his trust, delivered one half of said goods to *Richmond*, and, in payment therefor, took from him, his notes for the aggregate amount of $2,209, with one *Dudly Cobb* as surety, who, since the execution of the notes, has died, insolvent. The receiver, *Thomas A. Stanfield*, having sued upon these notes, recovered a judgment thereon at the *April* term, 1850, of said Court, against *Richmond*, for $2,350. Prior to the rendition of this judgment, viz: on *September* 1, 1849, *Richmond*, with intent to defraud his creditors, executed a mortgage on his undivided half of said mill property, to *Jared Brook*, in trust for his, *Richmond's*, wife, for the payment of $3,829; and in *March*, 1850, with a similar intent, he deeded the same undivided half to *Eliakim Briggs*. After this, in *August*, 1850, the sheriff of *St. Joseph* county, by virtue of an execution issued on said judgment, levied on *Richmond's* half of the mill property, the same which had been mortgaged to *Brook* and conveyed to *Briggs*, and afterward, on the 10th of that month, sold the same to *Marston* for $985, who, having paid the purchase money, received a sheriff's deed. The relief prayed is, that the deed from *Richmond* to *Briggs* be adjudged fraudulent; that the mortgage to *Brook* be canceled; and for general relief.

Defendants answered. In their answer they allege, that the mortgage to *Brook* and the deed to *Briggs* were *bona fide*, and founded upon a valid consideration. And further, they allege, that the sheriff's sale of the mill property to *Marston* was void, in this, that it was not regularly appraised before the

sale thereof, by the sheriff; showing, specially, that one of the appraisers did not reside in the township in which the premises were situate.

The issues having been made, the cause was referred, by agreement, to *Thomas L. Harris*, a commissioner, and it was agreed that his report "should be made a final judgment in the case, with leave for either party to except thereto or appeal therefrom."

At the *April* term, 1857, the commissioner submitted his report, whereby he found the mortgage to *Brook* and the deed to *Briggs* fraudulent and void, as to existing creditors; also, the sheriff's sale to *Marston* void, on the ground that one of the appraisers was not a resident of the township in which the land was situate; and further, that *Marston*, by his purchase and payment of the purchase money, to the extent of his purchase, became subrogated to the right of the execution creditor, and that he had, and his legal representatives have, the right to maintain this action to set aside the fraudulent conveyances; and, therefore, he, the commissioner recommended a decree in accordance with the prayer of the bill, &c.

To this report *Clarissa Richmond* and her husband objected: 1. "That it was contrary to law. 2. The report was too indefinite to admit of rendering a decree upon it. 3. The prayer of the bill was, that *Marston's* title, under his purchase at sheriff's sale might be quieted in him, while the report shows that the sale was void; consequently the Court could render no decree in accordance with the prayer of the bill as recommended by the report. 4. The plaintiffs could not be subrogated to the rights of the plaintiff in the judgment against *Richmond*, as to the amount paid by *Marston* on his void purchase at sheriff's sale." The Court overruled the exceptions, and rendered a decree setting aside the sheriff's sale to *Marston*, but not the levy of the execution, and that the plaintiffs be subrogated to the rights of *Stanfield*, the receiver, to the amount of $985, paid by *Marston*, and interest thereon from date of sale: the decree, also, set aside the mortgage to *Brook* and the deed to *Briggs*, and directed that a copy of the order should be issued to the sheriff, and that he should sell the property levied on, and out of the proceeds should pay the plaintiffs

demand, then the costs, and return the overplus, if any, into Court, to be disposed of as the Court should direct.

Can the doctrine of subrogation be applied to the case made by the record? This is the main inquiry in the case. We are not advised of any direct adjudication upon the point involved in this question; but there are various authorities to the effect, that " it is only in cases, where the person paying the debt, stands in the situation of a surety, or is compelled to pay, in order to protect his own interests, or in virtue of legal process, that equity substitutes him in the place of the creditor, as a matter of course, without any special agreement. A stranger paying the debt of another, will not be subrogated to the creditor's rights, in the absence of an agreement to that effect: payment by such person, absolutely, extinguishes the debt and security." 1 Leading Cases in Eq. 113, and authorities there cited. This exposition being correct, and we think it is, we are unable to perceive any ground upon which the decree, so far as it subrogates the plaintiffs to the rights of the judgment creditor, can be maintained. The position of *Marston* was that of an ordinary vendee at sheriff's sale, and nothing more. There is, indeed, nothing in the case, in any degree, tending to show, that the protection of his interest, required, or even induced, the purchase. He purchased the land and paid for it, voluntarily; we must, therefore, hold that the amount which he paid to the sheriff, operated as a discharge, *pro tanto*, of the creditor's judgment, and that judgment being thus satisfied, there could be no substitution.

But suppose, in this conclusion, we are incorrect; the decree must still be considered erroneous, because the money advanced on the void sale, was paid by *Marston* to the use of *Richmond*, the execution defendant, and consequently, his administrator, and not his heir, was entitled to recover it. Hence there were no proper plaintiffs, to authorize the Court in rendering the decree of subrogation. The sheriff's sale being a nullity, the administrator of *Marston*, may have the right, by suit against *Richmond*, to recover the money paid to the sheriff on the void sale. See 3 Blackf. 293; 9 Ind. 1; 10 *id*. 172. But there seems to be nothing in the record that would authorize the remedy, by substitution, adopted in this decree.

Nov. Term,
1860.

RICHMOND
v.
MARSTON.

The appellee has filed a cross error; but, as the point involved in it is not relied on in his brief, that error will be considered as waived. Ind. Dig. 722, rule 28. It is also insisted that no exception was correctly taken to the rulings of the Circuit Court; we think otherwise. The record plainly shows that proper exceptions were taken, and, further, that the points assigned for error, by the appellants, are properly before us.

*Per Curiam.*—The decree, so far as it subrogates the plaintiffs to the rights of the judgment creditor, and directs the sheriff to sell the property levied on, is reversed, in all else it is affirmed. Costs against the appellees in this Court, &c.

*J. B. Niles*, for appellants.

*J. A. Liston*, for appellees.

(1) Mr. *Niles* for appellants : That the doctrine of subrogation prevails only in favor of persons who are sureties, or who are compelled for their own protection, or by legal process, to pay a debt. Story's Eq. Jur. § § 633 to 638, § § 493, 1227, 1229; *Eddy* v. *Traver*, 6 Paige, 521; *Peet* v. *Beers*, 4 Ind. 46; *Benton* v. *Shreeve, id.* 66; *Sanford* v. *Mc. Lean*, 3 Paige's Ch. R. 117.