## MERCANTILE TRUST CO. v. HART.

### (Circuit Court of Appeals, Eighth Circuit.  November 2, 1896.)

### No. 755.

TAXES—VOLUNTARY PAYMENT—SUBROGATION.

A county treasurer accepted a check in payment of certain state and municipal taxes upon certain real property, which the law of the state required to be paid in money, and entered the taxes as paid in his official record. Subsequently he advanced the amount of the taxes to the state and municipality out of his own funds. The check was never paid, and some years thereafter a suit was brought to foreclose a mortgage existing upon the property at the time said taxes were thus advanced. The treasurer intervened in such suit, praying that he might be subrogated to the lien of the state and municipality for the taxes thus paid, and that the amount thereof be refunded out of the income of the property, in preference to the mortgage debt. *Held*: (1) That he was not entitled to be subrogated to the lien of the state and municipality, because the payment of the taxes was voluntary; (2) that, on grounds of public policy, the treasurer was not entitled to be subrogated to the rights of the state and

municipality; and (3) that he was not entitled to subrogation, as, by the provisions of the mortgage, a failure to pay taxes when due constituted a default by reason of which a suit for foreclosure might have been maintained, which was delayed, to the prejudice of the mortgagees, by the treasurer's entry on the official records that the taxes had been paid.

Appeal from the Circuit Court of the United States for the District of Colorado.

This was a bill by the Mercantile Trust Company against the Colorado Mining-Stock Exchange, to foreclose a deed of trust in the nature of a mortgage. David W. Hart, treasurer of Arapahoe county, filed an intervening petition, setting forth the payment by himself of certain taxes upon the mortgaged property, and praying that he might be subrogated to the rights of the state, the city of Denver, and the board of education, as if the taxes had not been paid, and that the lien decreed in his favor might be adjudged superior to that of the bond holders. From a decree in favor of intervener, plaintiff appealed.

Charles W. Waterman (Edward O. Wolcott and Joel F. Vaile were with him on the brief), for appellant.

D. V. Burns, for appellee.

Before CALDWELL, SANBORN, and THAYER, Circuit Judges.

THAYER, Circuit Judge. This is an appeal from a decree in favor of David W. Hart, the appellee, which was rendered on an intervening petition that was filed by said Hart in a pending foreclosure suit. The facts disclosed by the record are substantially these: On June 28, 1895, the Mercantile Trust Company, the appellant, filed a bill in the circuit court of the United States for the district of Colorado to foreclose a deed of trust, in the nature of a mortgage, on certain property situated in the city of Denver, Colo., which at the date of the execution of the deed of trust belonged to a corporation known as the "Colorado Mining-Stock Exchange." The deed of trust had been executed by the last-mentioned company for the purpose of securing the payment of an issue of negotiable bonds to the amount of $250,000. On August 12, 1895, David W. Hart, the appellee, filed an intervening petition in said cause, wherein he alleged that on October 17, 1892, he was the treasurer of the county of Arapahoe, state of Colorado; that certain taxes had become due on the property covered by the aforesaid deed of trust, which it was his duty as treasurer to collect and pay over to the state of Colorado and to the proper municipalities and school corporations to which such taxes belonged, and for whose benefit they had been imposed; that on October 17, 1892, and on October 25, 1892, the Hicks & Bailey Investment Company, and the firm of Hicks & Bailey, respectively, drew checks in his favor, as treasurer of Arapahoe county, on certain banks in the city of Denver, for an amount sufficient to pay said taxes, which then amounted to the sum of $2,238.13, and delivered said checks to said treasurer in payment of said taxes; that at the time of receiving said checks, he, as treasurer, executed receipts for said taxes and delivered the same to the drawers of said

checks, and caused entries to be made on the public records kept in his office that said taxes were paid; that, supposing the drawers of said checks to be solvent, and under a legal obligation to pay said taxes, he thereafter, in his settlements as county treasurer, paid over the amount of said taxes on the property aforesaid to the proper authorities; that, at the time of making such settlements and paying over said taxes, he had no intention of paying the same out of his own funds, but believed and was assured by the drawers of the checks that they would deposit funds in bank sufficient to meet said checks; and that, relying on such belief and assurance, he made the settlements and payments aforesaid. The intervener further alleged that the drawers of said checks had both become insolvent, and that, finding themselves so insolvent, they had subsequently surrendered to him the aforesaid tax receipts which had been executed and delivered when the aforesaid checks were drawn. In view of the premises, the intervener prayed that he might be subrogated to all the rights of the state of Colorado, the city of Denver, and the board of education, as if said taxes had neither been paid nor receipted for, and that the lien decreed in his favor might be adjudged to be superior to that of the mortgage bond holders, and that said lien might be satisfied out of the current income of the mortgaged property. The Mercantile Trust Company, hereafter termed the "Trust Company," first demurred to the intervening petition, and, said demurrer having been overruled, it thereupon answered the intervention. The answer so filed showed, among other things, that the mortgaged property in question, and all the rents derivable therefrom since the foreclosure suit was instituted, would be wholly inadequate to pay the outstanding mortgage indebtedness; that neither the trust company, nor any of the mortgage bond holders, had any knowledge or notice of any of the facts alleged in the intervening petition, until it was filed; that, under the provisions of the mortgage sought to be foreclosed, the trust company, acting as trustee for the mortgage bond holders, might have caused a suit for foreclosure to have been instituted, and might have procured the appointment of a receiver and the sequestration of the rents and profits of the mortgaged property for the benefit of the bondholders, in the fall of the year 1892, if it had been advised that the taxes due in October, 1892, had not in fact been paid by the mortgagor; that the official records of the county treasurer's office had at all times shown, since the latter part of October, 1892, that said taxes were fully paid and discharged; that the payment of said taxes by the intervener was purely voluntary payment; and that the laws of the state of Colorado required the payment of taxes to be made in cash.

As the case was disposed of in the circuit court on pleadings showing substantially the aforesaid facts, without the introduction of any testimony, the question presented by the appeal is whether the decree which sustained the intervener's claim, and granted the relief prayed for, can be upheld. This question, we think, should be answered in the negative. On the state of facts disclosed by the record, and heretofore stated, the payment made by the intervener of

the taxes in question must be regarded as a voluntary payment. He was under no legal obligation to any one to advance and pay the taxes upon the mortgaged property. It was his duty simply to collect the taxes thereon in the mode and within the time provided by law, and, when collected, give the proper receipts, make the proper entries in his official record, and pay over the money received to the proper authorities. He was under no obligation to accept checks in payment of said taxes when the same were tendered in payment. The laws of the state of Colorado made the taxes in question payable in cash only. Mill's Ann. St. Colo. § 3854. Therefore, if he saw fit to accept checks in lieu of money, and to enter the taxes as paid upon the official records of the county when the checks were received, and if he thereafter elected to pay over the amount of the taxes to the state and municipalities to which they belonged, in reliance upon the promise of the makers of the checks that they would deposit the requisite funds to make the same good, he must be regarded as having acted throughout of his own free will, and at his own peril, for the accommodation of the taxpayer. Even if he thought proper to accept checks from taxpayers in lieu of money, no obligation rested upon him to enter the taxes as paid in the books kept in his office, or to give receipts therefor, until the checks had been collected. In assuming to enter the taxes as paid in advance of the collection of the checks, he acted voluntarily. It is no answer to this view to say that, because the various duties of his office were discharged by deputies, the intervener did not act voluntarily, or that he labored under a mistake of fact in paying the aforesaid taxes. He is responsible for the conduct of his deputies, and must be presumed to have had knowledge of all acts done or performed by them in an official capacity. The case must be regarded in the same light as if the intervener had personal cognizance of the acceptance of the checks and of all subsequent transactions. Indeed, the record fails to show that he did not have such personal knowledge of the various transactions aforesaid. Inasmuch, then, as the intervener was under no obligation, either as a surety or otherwise, to pay the taxes in question, and inasmuch as his conduct seems to have been inspired wholly by a desire to accommodate the taxpayer, it must be ruled that he cannot be subrogated to the rights of the state with respect to the taxes which he advanced and paid. It is uniformly held that the right of subrogation does not exist and cannot be invoked under such circumstances. The case of In re Wallace's Estate, 59 Pa. St. 401, is very much in point. In that case taxes due from a property owner had been advanced and paid by the collector of taxes, and subsequently the owner had confessed a judgment in favor of the collector for the taxes so advanced. The collector claimed the right to be subrogated to the lien of the state, but the right was denied. The court said, in substance, that it might well be doubted whether a person could ever claim subrogation to the rights of the state as respects a lien for taxes, but that such right could not be claimed where the payment of taxes was voluntary, nor where subrogation, if allowed, would prejudice the rights of a third party, such as a subsequent judgment creditor. In the case of Wil-

kinson v. Babbitt, 4 Dill. 207, Fed Cas. No. 17,668, a collector of internal revenue who had paid to the government certain public moneys which one of his deputies had unlawfully deposited in a bank that had subsequently failed, was held not entitled to subrogation to the right of the United States to claim a preference against the assigned effects of the insolvent bank. Also, in the case of Griffing v. Pintard, 25 Miss. 173, and Hinchman v. Morris, 29 W. Va. 673, 2 S. E. 863, it was held that a tax collector and a sheriff, respectively, who had advanced and paid certain taxes for taxpayers, were not in a position to be subrogated to the rights of the state in whose behalf a lien for the taxes had been created. Inasmuch as a public tax is a debt of such a character that it cannot be assigned or farmed out by the state or municipality to whom it is due (McInerny v. Reed, 23 Iowa, 410, 415), a case must be very exceptional and peculiar when the right arises to be subrogated to the lien of the state or a municipality. It would certainly be contrary to sound public policy to concede that a collector may accept payment of taxes in a mode not authorized by law, and thereafter, when confronted with a possible loss, be allowed the right of subrogation. In re Wallace's Estate, 59 Pa. St. 401, 405; Hinchman v. Morris, 29 W. Va. 689, 2 S. E. 863. See, also, Insurance Co. v. Middleport, 124 U. S. 534, 547, 8 Sup. Ct. 625; Sheld. Sur. § 240.

But, aside from the foregoing considerations, the right of subrogation ought not to be conceded in the case at bar, because the rights of the mortgage bond holders, for the reasons fully disclosed in the answer of the trust company, would be injuriously affected. By the provisions of the mortgage, a failure on the part of the debtor to pay, when due, the taxes that were assessed against the mortgaged property, constituted a default, on account of which a suit for foreclosure might have been maintained, in which proceeding the income of the mortgaged property might have been appropriated to the satisfaction of the mortgage debt shortly after the default occurred. No such action was brought until the present suit was instituted on June 28, 1895, because the trust company and the bond holders were induced to believe, by the action of the intervener, that the taxes for the year 1892 had been fully paid and discharged. It now transpires that the property covered by the mortgage is inadequate to pay the mortgage debt, and that the mortgagor is insolvent. The loss of the taxes which were advanced by the intervener must fall on some one, and, in view of the circumstances under which they were paid, it is certainly more equitable that the loss should be borne by the intervener, than that it should be cast on the bond holders. It was because the intervener accepted checks in payment of the taxes, which was an act not authorized by law, that he incurred the loss in question. Under these circumstances, he has no equitable right, as against the bond holders, to be subrogated to the lien of the state or the municipalities to whom the taxes belonged. The decree of the circuit court is reversed, and the case is remanded to that court, with directions to dismiss the intervening petition, at the cost of the intervener.