THE J. B. WATKINS LAND MORTGAGE COMPANY v. MARK WILLIAMS *et al.*

No. 12,144.   (64 Pac. 976.)

SYLLABUS BY THE COURT.

NOTE AND MORTGAGE—*Interest Coupons—Subrogation.* A second mortgagee who voluntarily pays and consents to the cancelation of interest coupons secured by a first mortgage cannot, in an action subsequently brought to foreclose the same, be subrogated to the rights of the first mortgagee as to such coupons, and a decree allowing him to participate *pro rata* with the holder of the first-mortgage bond in the proceeds of the sale is erroneous.

Error from Harper district court; G. W. McKAY, judge. Opinion filed May 11, 1901. Division one. Reversed.

*Bishop & Mitchell,* and *J. H. Mitchell,* for plaintiff in error.

*H. Llewelyn Jones,* for defendants in error.

The opinion of the court was delivered by

ELLIS, J. : In the court below a decree was entered in favor of the defendant John D. Brown, which in effect subrogated the latter to the rights of the original mortgagee under a real-estate mortgage given by Mark Williams and Nannie B. Williams, his wife, to William Neild, on the 1st day of January, 1886, as to three coupons attached to the original bond secured by said mortgage, which coupons, at the time of the foreclosure of said mortgage and decree complained of, amounted to the sum of $213.

The sole question in this case is whether subrogation can be decreed in favor of one who, as second mortgagee of real estate, voluntarily pays to the first mortgagee, and consents to the cancelation of, certain interest coupons secured by the first mortgage. The plaintiff in this action is the assignee and successor in interest of William Neild, who, in 1889, held a bond and first mortgage on certain lands in Harper county. While said Neild was the owner of said bond and mortgage, the plaintiff acted as his agent, and while so acting in his behalf received from the Sioux Investment Company, of which John D. Brown is the successor in interest, the following letter :

"ANTHONY, KAN., July 10, 1889.
"*J. B. Watkins Land Mortgage Co., Lawrence, Kan.:*

"GENTLEMEN—In your letter of June 27 to the Kansas Mortgage and Investment Co., you named $304.30 as the amount due July 1 as interest on the loans of Mark Williams. We herewith send N. Y. draft for $305.30 to pay the same, provided you will assign the coupons to Sioux Investment Co., and provided, also, that the coupons you assign us, with the interest earned thereon, amount to the $304.30. We hold a second mortgage on the land, and are willing

to advance the interest to you if we can get such an assignment as will show that we have paid the amount we send you.

"If this is not satisfactory, please write us what will make it satisfactory. We ask you to make no costs in the cases till we have time to pay you interest in such a way as will protect us.

"The land on which we wish to pay interest on the mortgage is N.W. 12, 31, 8 and S. ½ of S.W. ¼ of 12, and W. ½ N.W. ¼ 13, 31, 8, Harper county, Kansas.

Very truly,        Sioux Investment Co.
By John D. Brown, Pt."

In reply the plaintiff sent the following letter:

"Lawrence, Kan., July 12, 1889.
"*Sioux Investment Co., Anthony, Kan.:*

"Dear Sir—We have your favor of the 10th inst. enclosing draft for $305.30, which you send us to make payment of the past-due interest on the Mark Williams loans, provided we assign the coupons to you. This we cannot do. If it were a matured loan, in which the bond could also be assigned, and the payment received would close the transaction with us entirely, it would be a different matter; but to have the coupons out with our assignment on them, in which suit might possibly be brought to enforce collection, and we, therefore, be made parties to the suit and have to look after the matter, is what we do not care to do. Of course, so far as the mere fact of being assigned 'without recourse' is concerned, that is all very good, but we have about as much business to look after in the way of protecting running loans as our attorneys can attend to personally. Of course, we would like to do what we can to protect you from loss, after having made payment of the interest, but as you hold a second mortgage, it is to your interest to look after the first, if the borrower does not.

"If you wish to remit to us payment of the interest and receive coupons and notes duly canceled, we should be pleased to enter up payment and send the coupons to you; otherwise we presume we will have to collect from Williams by process of suit. The amount

necessary to make payment of interest now is $307, and these figures will hold good until the 20th inst.
Yours truly,    J. B. WATKINS L. M. Co.
SAXEY.
"We return your draft herewith."

The draft mentioned in these two letters was returned as stated in the latter one.   The following letter, enclosing a draft as therein stated, was sent in reply to the plaintiff:

"ANTHONY, KAN., July 19, 1889.
"*J. B. Watkins L. M. Co., Lawrence, Kan.:*
"GENTLEMEN—Your favor of the 12th inst. was duly received.   We herewith send N. Y. exchange for $307 to pay all matured interest on the two loans of $1000 each and com. loans secured by mortgage on land in sections 12 and 13, twp. 31, R. 8 W., in Harper county, Kansas.

"Provided, however, we make this payment on conditions that you send us canceled coupons amounting, with interest earned since maturity, to not less than $305.   We do not want to pay this interest if anything more than face of coupons and interest earned is charged.       Very truly,
JOHN D. BROWN, *Prest.*"

After the receipt of this letter the plaintiff canceled the coupons referred to and forwarded the same to Brown as requested.   The amount due upon the coupons at that time was more than $305.

Later the plaintiff brought suit in foreclosure against the land for the principal of the bond and the unpaid coupons attached thereto.   The defendant Brown set up the coupons received by him from plaintiff; alleged that the plaintiff had knowledge that he (Brown) had furnished the money with which they had been taken up; prayed to be sub rogated to the rights of the original mortgagee as to said coupons, and asked to have the same declared a lien on said land and to share *pro rata* with

3—63 KAN.

the plaintiff's claim in the distribution of the proceeds of the sale. At the trial, the court below acceded to defendant's demand and entered a decree accordingly.

Had the plaintiff assigned the coupons in question agreeably to the request made to it in the letter dated July 10, it would have been presumed that no payment was intended, and in a subsequent foreclosure of the mortgage the legal holder of such coupons would have been entitled to subrogation as adjudged by the court below. (*Champion v. Investment Co.*, 45 Kan. 103, 25 Pac. 590, 10 L. R. A. 754.) However, as the plaintiff had a right to refuse and did unequivocally decline to assign such coupons or to accept their value without payment and cancelation, the defendant, having acquiesced in such requirements of the plaintiff, cannot be heard to say that he in fact purchased the coupons, nor can the powers of a court of equity be invoked in his behalf to the injury of the prior mortgagee or his assigns. It may be that, as between Brown and the mortgagor, the former ought to recover judgment on the coupons, and have the same declared a lien on the land subject to that of plaintiff; but in any event such defendant should not share *pro rata* with the plaintiff in the proceeds of the sale. The plaintiff's right thereto was paramount, and by failing so to determine the court below committed an error for which its judgment must be reversed. (*Bartholomew v. National Bank*, 57 Kan. 594, 47 Pac. 519; *Skinkle v. Huffman*, 52 Neb. 20, 71 N. W. 1004; *Union Trust Co. v. Monticello & P. J. R. Co.*, 63 N. Y. 311, 20 Am. Rep. 541.)

The judgment of the court below will be reversed, and the case remanded for further proceedings in accordance with this opinion.

DOSTER, C. J., SMITH, POLLOCK, JJ., concurring.