## EMPLOYES' BUILDING & LOAN ASS'N v. CRAFTON et al.

No. 5064—Opinion Filed April 10, 1917.

(164 Pac. 473.)

(Syllabus by the Court.)

**Lis Pendens—Subrogation—Mortgages—First Mortgage—Priority.**

While R. was the owner of the lots in controversy, he conveyed them to K., the wife of S., subject to a first mortgage to the loan company. She thereafter conveyed them to C., subject to that and also a second mortgage to W. Before K. parted with her title to the lots, one M. sued K. and her husband in debt, and made the first and second mortgagees parties defendant and established a lis pendens on the lots, and an equitable lien thereupon in favor of M., and they were sold on execution to M., subject to those mortgages, in satisfaction of his judgment, whereupon a sheriff's deed therefor issued to him and he was placed in possession. Pending M.'s suit, and before judgment, but unknown to M., plaintiff loaned C. money to pay the first and second mortgages, which he did, and the same were satisfied of record, and took a third mortgage on the land for the amount. In a suit by plaintiff to foreclose its mortgage, held, that it was a volunteer and not entitled to be subrogated to the rights of the loan company in its mortgage, and, for the reason that plaintiff's mortgage was executed after M.'s action had established a lis pendens against the lots, the lien of that mortgage thereto did not attach so as to affect M.'s title subsequently acquired, that M., as purchaser under his judgment, took title thereto clear of plaintiff's mortgage, and that the trial court did right to so hold and cancel and remove the same as a cloud on M.'s title.

Error from District Court, Pottawatomie County; Chas. B. Wilson, Jr., Judge.

Suit by the Employes' Building & Loan Association against D. A. Crafton and Lizzie Crafton, his wife, and Edward Hagener and A. S. Pace, in which G. W. Martin and the Oklahoma State Bank were made parties defendant. Judgment for plaintiff against the defendants Crafton and Hagener, and judgment for defendant Martin on his cross-petition, from which judgment plaintiff brings error. Affirmed.

Chas. H. Woods, Geo. M. Green, and Edward Howell, for plaintiff in error.

E. C. Stanard, J. H. Wahl, and C. H. Ennis, for defendant in error Martin.

TURNER, J. On December 9, 1911, in the district court of Pottawatomie county, Employes' Building & Loan Association, plaintiff in error, sued D. A. Crafton and Lizzie, his wife, for a balance of $760.05 due on their promissory note for $1,000 and to foreclose a mortgage, providing for an attorney's fee, on lots 4 and 5 and 20 feet off the north side of lot 6, in block 1, in W. J. Riggs addition to the city of Shawnee, made, executed, and delivered by the Craftons to plaintiff July 29, 1908, to secure the payment thereof. Edward Hagener and A. S. Pace were alleged in the petition to be the successive owners of the equity of redemption, and G. W. Martin and the Oklahoma State Bank to claim some interest in the property inferior to that of plaintiff, and were made parties defendant and are defendants in error. Crafton and wife and Hagener defaulted; the bank disclaimed; Pace pleaded payment, and Martin filed an answer and cross-petition. After the issues were thus joined, there was trial to the court, and judgment for plaintiff and against the Craftons and Hagener for the amount claimed, which was decreed to be a lien upon the land prior to the rights of all the defendants, save Martin, and all of them except Martin were taxed with the costs of the foreclosure. As to Martin, the court, on trial of the issues joined between plaintiff and himself on his cross-petition, held him to be the owner and in possession of the lots in controversy, with title therein superior to that of any of the defendants and prior and superior to the mortgage lien sought to be foreclosed, and ordered, adjudged, and decreed that his title to the land be quieted, and that plaintiff's mortgage be canceled as a cloud upon his title. To which judgment on the cross-petition plaintiff excepted, and brings the case here.

The judgment upon the cross-petition is not contrary to the evidence, as contended. There is no dispute as to the facts. The evidence discloses that on September 27, 1906, one W. J. Riggs, being the owner of the land,

by warranty deed conveyed the same to Kitty, the wife of C. W. Sutherland, subject to a mortgage of $800, payable to Standard Savings & Loan Association. On March 14, 1908, Kitty, by a like deed, conveyed the land to the defendant D. A. Crafton, subject to that mortgage, and, also to a second mortgage of $300, payable to one Wyant. Before Kitty parted with the title to the land, to wit, on November 1, 1906, Martin sued the Sutherlands and said first and second mortgagees in the district court of Pottawatomie county, alleging that on March 23, 1906, the Sutherlands had made, executed, and delivered to him their promissory note for $121, due 30 days thereafter, and to secure the same executed a mortgage on lot 5 in block 6 in North Park addition to Shawnee; that they had no title to said lot, and did not intend to mortgage it, but thereby did intend to mortgage lot 6 in block 5, North Park addition, at that time owned by C. W. Sutherland; that thereafter they conveyed said lot 6 in block 5 to W. J. Riggs, who took title thereto in good faith, and received in exchange therefor a deed to lots 4 and 5 and 20 feet off the north side of lot 6, block 1, in W. J. Riggs addition to the city of Shawnee; that is, the land described in the mortgage sought to be foreclosed. The prayer of the petition was that plaintiff have judgment against the Sutherlands on the note together with interest and attorney's fee, and that the amount thereof be declared an equitable lien on said lots 4 and 5 and 20 feet off the north end of lot 6, in block 1, and that the same be sold subject to the mortgage to the Standard Savings & Loan Association and the Wyant mortgage aforesaid. All of which was attempted to be and would have been done pursuant to a judgment duly rendered and entered by default against all the defendants, save Wyant, who was served, dated December 22, 1906, had not the Sutherlands, on January 30, 1908, pursuant to their motion so to do, set the sale aside and answered, denying all the allegations in the petition save those of indebtedness, which they admitted, but pleaded no defense thereto. And nothing further was done in the case until February 15, 1910, at which time a like judgment by default was again rendered and entered against them, whereupon it was again adjudged and decreed that plaintiff have judgment for $129.40, together with interest and attorney's fees. that plaintiff was entitled to an equitable lien on the land, and that the same be sold to satisfy said debt, subject to the mortgages aforesaid. Pending the suit, to wit, on July 29, 1908, the Craftons, being then the owners of the land subject to the mortgages aforesaid, borrowed the amount of money evidenced by the mortgage sought to be foreclosed, and, unknown to Martin, with it paid and had released of record the mortgages; and when the land was sold, subject to the mortgages aforesaid, to satisfy Martin's judgment, and he had bid it in at the sale for $700, and paid into court $438.10, which was the amount of his bid, less the amount of his judgment and costs, and the sale was confirmed and a sheriff's deed issued pursuant thereto, and he was put in possession of the land, this suit was brought.

It is plaintiff's contention that, although the lien of its mortgage attached to the land pending Martin's suit, resulting in a judgment fixing an equitable lien upon the land, subject to the two prior mortgages aforesaid, yet as the $1,000 loan to the Craftons, evidenced by plaintiff's mortgage, paid off those mortgages, plaintiff is entitled to have the Standard's mortgage kept alive and be subrogated to all rights of the mortgagee therein, and have its present mortgage foreclosed and the lien thereof declared superior to the lien of Martin's judgment, and the land sold to satisfy the same. Not so. When plaintiff furnished the Craftons with this $1,000 to pay the Standard's mortgage, aside from being an incumbrancer pendente lite when it took back the mortgage sought to be foreclosed. plaintiff was a stranger to the title, a volunteer, and not entitled to subrogation therein, for the reason that when that mortgage was paid, it was extinguished, as held by the trial court. In Watson v. Wilcox, 39 Wis. 643, 20 Am. Rep. 63, quoting approvingly from Walworth, C., Ryan C. J., speaking for the court, said:

" 'It is only in cases where the person advancing money to pay the debt of a third party stands in the situation of a surety or is compelled to pay it to protect his own rights. that a court of equity substitutes him in the place of the creditor, as a matter of course, without any agreement to that effect. In other cases the demand of a creditor which is paid with the money of a third person. and without any agreement that the security shall be assigned or kept on foot for the benefit of such third person, is absolutely extinguished.' Sanford v. McLean, 3 Paige [N. Y.] 117 [23 Am. Dec. 773]."

In that case the facts stated in the complaint were: That on June 29, 1864, one Bates and another Harvey were in possession of certain lands claiming title to a portion thereof by deed from one Naiden, who became the owner thereof by purchase at foreclosure sale of a mortgage given to the defendant Wilcox, and to the remainder by a tax deed and a sheriff's deed executed pursuant to a judgment against Wilcox while he was the owner of the land. On the date

aforesaid, Bates conveyed his interest in the lands to the wife of Harvey. While the Harveys were in possession, they mortgaged the lands to Hodson April 23, 1866, for $2,500, on which was due and unpaid on October 26, 1869, $1,750. At that time, the Harveys, being unable to pay Hodson, applied to plaintiff to purchase the mortgage, which he agreed to do and, as they were about to make an assignment thereof, it was suggested that instead the mortgage be canceled, and that plaintiff take a new mortgage from the Harveys, which he agreed to do, whereupon plaintiff paid Hodson, at the request of the Harveys, $1,750 and took a new note and mortgage from the Harveys for that amount, which was duly recorded, and the Hodson mortgage satisfied of record. In the meantime, that is, on October 12, 1869, Wilcox commenced an action in the circuit court against Bates and wife and Harvey and wife, the result of which was that the deed to them from Naiden and to him from the sheriff, and the tax deed aforesaid, were declared mortgages to secure Bates and Harvey for advances made by them, and the deed from Bates and wife to Harvey and wife was declared a voluntary conveyance and void as against Wilcox. The prayer of the petition was that the mortgage to plaintiff be held valid as against Wilcox, and that plaintiff be subrogated to the rights of Hodson under that mortgage, and for judgment of foreclosure of plaintiff's mortgage. A demurrer to the complaint was sustained, and plaintiff appealed. In affirming the judgment, the court held that the lis pendens established by Wilcox's suit was sufficient to charge the appellant with notice; and, quoting from Downer v. Miller, 15 Wis. 612, said:

"We know of no case that has ever carried the doctrine of subrogation so far as to hold that a mere loan of money, for the purpose of enabling the borrower to pay a debt, entitles the lender to be subrogated to the rights of the creditor whose debt was thus paid. And Pelton v. Knapp, 21 Wis. 63, appears to proceed upon the same principle. See, also, Martin v. Vedder, 5 Cow. [N. Y.] 671. Richmond v. Marston, 15 Ind. 134, and the English and American Notes to Aldrich v. Cooper. Hare & Wallace's Edition of White & Tudor's Leading Cases, passim."

And so, we repeat, aside from Rev. Laws 1910, sec. 4732, under which the plaintiff was chargeable with notice of the pendency of Martin's action, and hence could acquire no interest in the land as against Martin's title, that plaintiff was a stranger, and not entitled to be subrogated to the rights of the mortgagee in the Standard mortgage, and that, too, although the evidence discloses that

plaintiff had no actual knowledge that Martin's action was pending at the time its mortgage was executed, and that the abstract failed to state the fact. And although, too, by refusing plaintiff relief, it will lose the $1,000 with which the Standard and the Wyant mortgages were satisfied, to Martin's benefit only.

In Garwood v. Administrators, etc., of Eldridge, 2 N. J. Eq. 145, 34 Am. Dec. 195, the facts were that Josiah Smith and wife, on February 26, 1810, gave to the executors of John Smith a real estate mortgage for $370, which was duly recorded and finally assigned to Willis and Haines. On April 29, 1815, Smith and wife made a second mortgage on the same land to Engle for $650, which was duly recorded. On January 26, 1824, for a consideration of $500, they conveyed the premises to complainant, and, as the deeds contained general covenant of warranty, the money was applied to the payment of the two mortgages which, by consent of both parties, were discharged and canceled of record. On May 30, 1822, or subsequent to the date of the cancellation of the mortgages, but prior to complainant's deed, William Eldridge obtained a judgment against Josiah Smith which was a lien upon the mortgaged land. Later he sued out an execution, and on April 19, 1824, the sheriff sold and conveyed the land to Eldridge, the plaintiff in the execution, for $330, which was a fair consideration. Eldridge lay still with his execution until after the plaintiff had discharged the mortgages. Under this state of facts the court denied the prayer of complainant to be subrogated to the rights of the mortgagees and said:

"Under these circumstances, the complainant asks the interference of this court. At law, it is quite certain, he is without remedy; for although he may have been, as he alleges, without actual notice of the Eldridge judgment at the time he purchased, yet he had constructive notice by the record, and unless the power of this court is sufficient to grant relief, the complainant will have lost the $500 with which he paid off the mortgages, and Eldridge will have received on his purchase the exclusive benefit thereof. There is then, to my mind, a natural justice in the complainant's case, to which I should be disposed to extend relief, if I could do so without disturbing well-established principles."

And in the syllabus:

"S. G. having purchased of the owner certain real estate, subject to two mortgages, and a judgment, applied the whole of the purchase money to the satisfaction of the mortgages, being the first incumbrances, and caused them to be canceled and discharged of record, held that a purchaser under the judgment took the property clear of the incumbrance of the mortgages, and that S. G.

was entitled to no relief in equity." See, also, Kahn v. McConnell et al., 37 Okla. 219 [131 Pac. 682, 47 L. R. A. (N. S.) 1189.]

We are therefore of opinion that plaintiff cannot recover, not only for the reason that plaintiff was a volunteer, and hence cannot be subrogated to the rights of the mortgagee in the Standard mortgage and permitted to enforce the lien thereof for its benefit, but for the further reason that, as plaintiff's mortgage which it is seeking to foreclose was executed after Martin's action against the Sutherlands had established a lis pendens against the land, the lien of that mortgage thereto did not attach so as to affect Martin's title, subsequently acquired on a sale of the land as the result of that suit (Holland v. Cofield, 27 Okla. 469, 112 Pac. 1032), and that the court did right to so hold and cancel the same and remove it from his title.

Finding no error, the judgment of the trial court is affirmed.

All the Justices concur.