MARKS et al. v. BAUM BLDG. CO. et al.

No. 8534—Opinion Filed May 21, 1918.

Rehearing Denied Oct. 29, 1918.

(175 Pac. 818.)

**1. Taxation—Payment—Junior Mortgagee—Lien.**

The right of a junior mortgagee to be subrogated to the lien of taxes upon the mortgaged property paid by him is not defeated because, at the time the loan secured by such junior mortgage was made, the taxes so paid were delinquent.

**2. Subrogation—Junior Mortgagee—Protection of Interest.**

One who has an interest in property by virtue of a mortgage lien, in making payment of prior liens to protect his interest, is not a mere volunteer, and is entitled to be subrogated to the rights of the superior lienholder.

**3. Same—Taxation—Payment by Junior Mortgagee—Lien—Construction of Mortgage Provisions.**

A provision in a mortgage upon real estate that, if the mortgagor shall fail to pay taxes or special assessments, or fail to pay when due any part of the principle or interest secured by a prior mortgage, then the mortgagee shall have the privilege of paying such taxes, discharging such liens, and performing the terms and conditions of said prior mortgage, and all sums so paid out and expended by the mortgagee shall be repaid by the mortgagor and shall be secured by the lien of the mortgage, imposes no obligation upon the mortgagee to make payment of taxes or perform the conditions of the prior mortgage, and such provision is not inconsistent with the right of the mortgagee to pay such taxes and perform the conditions of the prior mortgage to protect the lien of his mortgage; nor does such provision forbid such mortgagee being subrogated to the superior lien of taxes and of the first mortgage for sums paid by such mortgagee in satisfaction thereof to protect the security of his mortgage.

**4. Subrogation—Rights of Lienors—Statute.**

Section 3825, Rev. Laws 1910, is not inconsistent with section 3840, Rev. Laws 1910, and the rights given a lienholder by said section 3825 do not defeat and render ineffectual the rights given such lienholder by said section 3840.

**5. Election of Remedies—Acts Constituting —Parties Defendant.**

Plaintiffs, having filed a petition against one defendant seeking such relief as they were entitled to against said defendant, thereafter filed an amended petition, in which other parties were made defendants against whom further and additional relief was asked not prayed for in the first petition, and to which he was not entitled as against the original defendant. The filing of such original petition does not constitute such an election by the plaintiffs of their remedy as to estop them from seeking the relief to which they may be entitled against the other defendants, no elements of estoppel having been pleaded or shown.

**6. Subrogation — Taxation — Payments by Junior Mortgagee.**

Plaintiffs, holders of a third mortgage executed upon a leasehold interest and a building erected upon demised premises owned by the defendants, whose lien for rents under the terms of the lease was superior to the mortgage of the plaintiffs, but who had joined with the lessee in the execution of notes and of a first mortgage upon the building and the fee of the demised premises, paid installments of principal and interest due upon the first mortgage covering both the leasehold and the fee of the demised premises, and paid delinquent taxes assessed against the leasehold estate and the fee of the demised premises as a whole. Held, that as between the plaintiffs and defendants, lessors, the plaintiffs were entitled to subrogation for the sums so paid by them in discharging the installments of principal and interest due upon the first mortgage, and were entitled to be subrogated to a prior lien for the taxes so paid by plaintiffs, the equity of plaintiffs being superior to that of defendants.

**7. Subrogation—Partial Payment of Lien.**

While, as a general rule, one will not be entitled to subrogation to a lien which he has only partly satisfied, yet this rule is subject to the qualification that, when the indebtedness secured by the prior lien is payable in installments, a junior lienholder who pays an installment for the protection of his own security will, as against the mortgagor, be subrogated to the rights of the holder of the superior lien, subject to any balance due upon such superior lien.

(Syllabus by Rummons, C.)

Error from District Court, Oklahoma County; John W. Hayson, Judge.

Suit by I. E. Marks and others against Baum Building Company and Anna L. Overholser, guardian of Henry Overholser, an incompetent, and the Union Trust Company with answer and cross-petition by defendant

Overholser. From a judgment denying a right of subrogation, plaintiffs bring error. Reversed and remanded, with directions to enter judgment for plaintiffs.

Asp, Snyder, Owen & Lybrand, for plaintiffs in error.

Everest & Campbell, for defendants in error.

Opinion by RUMMONS, C. On January 1, 1909, the defendants in error, Henry Overholser and Anna Overholser, hereinafter styled defendants, leased to M. J. Baum two lots in Oklahoma City for a period of 99 years, at a yearly rental of $7,200, payable in monthly installments of $600 each, the lessee agreeing to pay all taxes on both the leasehold estate and the fee during the term of the lease. It was further agreed that the lessee would erect a building upon the premises, which, at the termination of the lease, was to become the property of the defendants at an appraised value. The lease provided that, on default in the payment of rent or taxes after 60 days' notice, the lessors might declare the term at an end and foreclose the interest of the lessee. The lease was by its terms assignable, and was assigned by Baum to the Baum Building Company, a corporation, which erected a building upon the premises. The defendants and the lessee further agreed that the defendants were to join the lessee in the execution of a mortgage upon both the leasehold and the fee for the sum of $70,000. On August 1, 1909, the lessors and the lessee executed seventy $1,000 promissory notes to the Union Trust Company, securing the payment thereof by a mortgage covering both the leasehold and the fee. On July 29, 1911, the lessee executed to the Union Trust Company a mortgage for $30,000 upon the leasehold estate alone. On February 8, 1912, the lessee executed a third mortgage upon the leasehold alone for the sum of $50,000 to the plaintiffs in error, hereinafter designated as plaintiffs. The first mortgage of $70,000 to the Union Trust Company was payable in installments. On February 1, 1913, there were due installments of principal and interest on the first mortgage by the defendants and the lessee in the sum of $6,950, and M. J. Baum and the Baum Building Company were insolvent. Plaintiffs on said date paid this sum to the first mortgagee. On September 5, 1912, the taxes for the year 1911 being delinquent, and the leasehold and fee being about to be sold for such taxes, plaintiffs paid the same in the sum of $3,483.04, and on June 28, 1913, under like circumstances, plaintiffs paid the taxes for the first half of the year 1912 on said leasehold estate and fee in the sum of $2,225.81.

On February 12, 1913, plaintiffs commenced this action against the Baum Building Company, a corporation, alleging the execution and delivery of the third mortgage to plaintiffs, praying the appointment of a receiver, and praying a money judgment against the Baum Building Company for the amount due under the third mortgage and a foreclosure thereof. The petition further alleges the payment of the sums hereinbefore set out to secure the lien of the plaintiffs, and prays "judgment of the court that the lien of the third mortgage be extended over and declared to be one to secure the payment of the principal and interest upon said sum in this paragraph mentioned as having been advanced and paid upon the indebtedness secured by said first and second mortgages." A receiver was appointed to take charge of the Baum building, as prayed in plaintiffs' petition.

On July 5, 1913, plaintiffs filed their first amended petition, again making the Baum Building Company the only defendant. This amended petition alleges the facts set forth in the original petition, and in addition additional taxes paid, and prays for a foreclosure of plaintiffs' mortgage, and that the receiver be continued in charge of the assets of the corporation.

On January 7, 1915, plaintiffs filed their second amended petition, to which Anna L. Overholser, guardian of the person and estate of Henry Overholser, an incompetent, and the Union Trust Company are made defendants with the Baum Building Company. This petition sets forth facts alleged in the first two petitions, and prays subrogation to the first mortgage, subject to any balance due on said first mortgage for the amount paid by plaintiffs on such first mortgage, and prays to be subrogated to the lien of the taxes paid by plaintiff.

The defendants Overholser filed answer and cross-petition, alleging default in the payment of rent and taxes under the terms of the lease, and praying a foreclosure of the lien provided by said lease. The first mortgage was not attempted to be foreclosed in this action.

On the trial the court foreclosed the interest of the Baum Building Company in the leasehold to satisfy the lien of the defendants Overholser and to satisfy the lien of the third mortgage of the plaintiffs, which was inferior to the lien of the defendants. The court denied subrogation to the plaintiffs, and plaintiffs appeal.

The only question involved in this appeal is whether or not the plaintiffs were entitled to be subrogated to the lien of the first mortgage for the sums of principal and interest paid thereon by plaintiffs and to the lien of the taxes paid by plaintiffs. In the consideration of this question we deem it advisable to consider the reasons advanced by defendants for denying the right of subrogation to the plaintiffs. It is first urged by counsel for defendants that as to the lien of $3,483.04, taxes for the year 1911, the plaintiffs are mere volunteers, for the reason that these taxes were delinquent at the time the plaintiffs made the loan of $50,000 upon the execution of the third mortgage on the leasehold estate. It is contended that, these taxes being delinquent at the time the third mortgage was taken, the plaintiffs must have contracted with reference to them, and it was their duty to have protected themselves out of the sum of $50,000 lent on the security of the third mortgage. We have carefully examined the authorities cited by counsel for defendants in support of this proposition, but they do not convince us. The case of Gadsden v. Brown, Speer's Eq. (S. C.) 37-41, cited by counsel for defendants, reads:

"The doctrine of subrogation is a pure unmixed equity, having its foundation in the principles of natural justice, and from its very nature never could have been intended for the relief of those who were in a condition in which they were at liberty to elect whether they would or would not be bound and, as far as I have been able to learn its history, it never has been so applied. If one, with the perfect knowledge of the facts, will part with his money, or bind himself by his contract, on a sufficient consideration, any rule of the law which would restore him his money or absolve him from his contract would subvert the rules of social order. It has been directed in its application exclusively to the relief of those that were already bound, who could not choose to abide the penalty. Sureties, for example, who have before become bound, are amongst the especial objects of its care. * * *

"Another example of the application of the principle will be found in the case where two creditors have mortgages or other liens on the same property from the same debtor. There if the subsequent creditor pay the prior debt, he is entitled to be substituted to the rights of the prior creditor, as a means, without injury to the prior creditor, of enabling him to secure the payment of his own debt. But I have seen no case, and none has been referred to in the argument, in which a stranger, who was in a condition to make terms for himself, and demand any security he might require, has been protected by the principle."

The language of this case and the facts involved therein do not support the contention of counsel for defendants. In that case Gadsden, at the request of Carroll, advanced $5,000 to be appropriated to the satisfaction of Carroll's bond and mortgage to one Pinckney. He took from Carroll a bond for the $5,000 and a mortgage on 11 slaves to secure the payment. The chancellor held that Gadsden was not entitled to be subrogated to the rights of Pickney in the mortgage extinguished and satisfied by the money advanced by him, holding that in paying off the Pinckney mortgage he acted as a volunteer, and that, having secured for the money advanced the security for which he contracted, he would be bound by the contract and not entitled to subrogation. In the case of Mercantile Trust Co. v. Hart, 76 Fed. 673, 22 C. C. A. 473, 35 L. R. A. 352, subrogation was asked by a county treasurer who received checks for taxes required to be paid in cash, and paid over the amount of such taxes to the state, city, or board of education. It was held that, as against the bondholders under a mortgage by the taxpayer, he was a mere volunteer and not entitled to subrogation.

The doctrine of Gadsden v. Brown has been followed by this court in Kahn v. McConnell, 37 Okla., 219, 131 Pac. 682, 47 L. R. A. (N. S.) 1189, and Employes' Building and Loan Ass'n v. Crafton, 63 Okla. 215, 164 Pac. 473. In the case last cited plaintiff lent money to pay two mortgages, which were satisfied, and took a mortgage to secure the sum lent. Before the execution of this mortgage Martin established a lis pendens, which subsequently ripened into a judgment under which the land mortgaged was sold. Plaintiff was held a mere volunteer, and not entitled to subrogation to the lien of the mortgages satisfied by the money lent by him. In the instant case the plaintiff advanced $50,000 taking a third mortgage as security, subject to two prior mortgages, and, of course, to taxes; the money was not advanced to satisfy prior liens.

To carry the argument of counsel for defendants to its logical conclusion would wipe out the right of subrogation on the part of a subsequent mortgagee in every case, since a subsequent mortgagee must in all cases contract with knowledge, actual or constructive, of the prior liens upon the property mortgaged. We can observe no logical distinction between a prior lien which has not yet matured and one that has become delinquent. In each case the primary duty of discharging the prior lien rests upon the mortgagor, and the subsequent lienholder has the right to presume that such lien will be satisfied by the mortgagor until he is

required to act to protect his security from a foreclosure of such prior lien.

It has been universally held by the authorities that one who has an interest in property by lien or otherwise, in making payment of prior liens, is not a mere volunteer, and that he will be entitled, upon paying off a superior lien, to protect his own lien to be subrogated to the rights of the superior lienholder. Crumlish's Administrator v. Central Improvement Co., 23 L. R. A. note, p. 127; Union Mortgage Banking & Trust Co. et al. v. Peters & Trezevant et al., 72 Miss. 1058, 18. South. 497, 30 L. R. A. 829; Employes' Building & Loan Ass'n v. Crafton, supra; Horr v. Herrington, 22 Okla. 590, 98 Pac. 443, 20 L. R. A. (N. S.) 47, 132 Am. St. Rep. 648; New v. Smith, 94 Kan. 6, 145 Pac. 880, L. R. A. 1915F, 771, Ann. Cas. 1917B, 362; Boley v. Daniel, 72 Fla. 121, 72 South. 644, L. R. A. 1917A, 734.

It is next urged that the payment made by the plaintiffs was under and by virtue of the provisions of the mortgage itself, and that plaintiffs, having provided a remedy by contract, are not at liberty to disregard it, but are bound by it. The mortgage contained the following provision:

"If the first party fails to pay any taxes or special assessments, or procure and maintain insurance as herein provided, or shall permit any liens for material or labor to be fastened upon said property, or shall fail to perform the terms and conditions of said lease, or shall fail to pay when due any part of the principal or interest secured by said prior mortgage (the mortgage of $70,000 having been specifically excepted and mentioned in said mortgage), or either thereof, then, and in such event, the second party shall have the privilege thereunder of paying such taxes, discharging such liens, performing the terms and conditions of the lease and of said prior mortgage, or procuring and paying for said insurance, and any sum or sums in such behalf so laid out and expended by second party shall be repaid by first party, and shall be secured by the lien of this mortgage, and shall bear interest at 6 per cent. per annum from the date of payment, and shall become due and payable on demand."

It is earnestly contended by counsel for defendants that this provision in the mortgage of plaintiffs provides them an exclusive remedy in case they were required to make payments of taxes to protect the lien of the third mortgage. We have carefully examined the authorities cited in the brief of counsel for defendants. We do not deem it necessary, however, to review them at length in this opinion. It is sufficient to say that they

are all cases in which the party claiming the right of subrogation lent or advanced money to pay off prior mortgages, taking as security therefor a mortgage which later proved void or ineffectual. The right of subrogation in these cases, in harmony with Gadsden v. Brown, supra, was denied. In the instant case the mortgage taken by plaintiffs provided that plaintiffs might, upon default of the mortgagor, elect to pay the amount secured by the first and second mortgages and taxes, and that for sums so paid plaintiffs would be entitled to a lien under their third mortgage. This provision, however, imposed no obligation upon the plaintiffs, nor is it easily apparent that plaintiffs themselves intended to waive or surrender any of their legal rights. In Union Mortgage, Banking & Trust Co. v. Peters & Trezevant et al., supra, it is said:

"The principle of equitable subrogation does not arise from contract (for that is conventional subrogation), but is a creation of the court of equity, and is applied in the absence of an agreement between the parties, where otherwise there would be a manifest failure of justice. It is never enforced for the protection of mere strangers and intermeddlers in the affairs of others, nor can it be invoked to override or displace the real contract of the parties; that is, where the security contracted for is in fact given, but its legal effect is not that expected, as in Howell v. Bush, 54 Miss. 437."

In Capen v. Garrison, 193 Mo. 335, 92 S. W. 368, 5 L. R. A. (N.S.) 838, it is said:

"Subrogation is a doctrine of equity jurisprudence. 'It does not depend on privity or contract, express or implied, except in so far as the known equity may be supposed to be imported into the transaction and thus raise a contract by implication.' 27 Am. & Eng. Enc. Law (2d Ed.) p. 203. It is the consequence which equity jurisprudence attaches to certain conditions. * * * Equity violates no law, and it does not assume to make a contract for the parties; it follows the law and upholds it, and when it comes to the relief of one to whom the law cannot afford adequate remedy it does not in so doing infringe the law or impair its force, nor does it reconstruct the contract between the parties. * * * Equity will not ingraft this doctrine on the transaction in the face of a contract that negatives the idea of subrogation. In other words, the contract may be silent on the subject, yet not inconsistent with the idea of subrogation; or, on the other hand, it may be silent on the subject, yet its terms, expressly or by implication, forbid the application of the doctrine. So it may be said that equity may apply the doctrine, although the contract does not either expressly or by legal implication, call for it;

but it will not apply it if the contract, either expressly or by legal implication, forbids it. The parties may not have had subrogation in their minds at all when they made the contract; but that fact alone would not control in a question of application of the doctrine. Equity will apply it, though the parties may never have thought of it, if it is not inconsistent with the contract or in violation of any one's legal rights, and if justice demands it."

In the instant case there is nothing in the provision of the mortgage relied upon by counsel for defendant forbidding the application of the doctrine of subrogation to the benefit of the superior liens paid off by plaintiffs. As we have said, the plaintiffs did not obligate themselves to make any payments for the mortgagor. The defendants in the instant case were not parties to the contract upon which they rely nor was it made for their benefit. The payments made by plaintiffs, however, inure to the benefit of the defendants, holders of the second lien upon the property here involved. In the case of Babcock v. Orcutt, 61 Okla. 139, 160 Pac. 729, this court said:

"Where the grantee of a purchaser at a void judicial sale goes into actual possession of the land in good faith, believing himself the owner of the title, and without notice of any irregularities in the judicial proceedings, and pays off a prior existing mortgage at maturity, and redeems the land from such mortgage, which mortgage he assumed and agreed to pay in his deed from the purchaser, he has such an interest in the land as will give him the right to redeem it from the mortgage lien. and he becomes the equitable assignee of the mortgagee, and occupies the position of a mortgagee in possession, and is subrogated to all the rights and equities of the mortgagee."

In that case the grantee of the purchaser at a void judicial sale assumed and agreed to pay a first mortgage on the land. This grantee thereafter paid off and satisfied such first mortgage. This court held that his contract with the grantor to pay this first mortgage did not defeat his right to be subrogated to the lien of the first mortgage upon the failure of his title because of the invalidity of the foreclosure sale. In view of the well-established doctrine that equity will enforce subrogation in favor of an inferior lienholder, and there being nothing in the provision of the mortgage relied upon by defendants forbidding the application of the doctrine, we cannot agree with the contention of defendants that plaintiffs' right to subrogation is thereby defeated.

Counsel for defendants next urge that the statutes of this state provide a remedy for the plaintiffs, and, there being a statutory remedy, the equitable remedy is excluded. Counsel rely upon section 3825, R. L. 1910, which is as follows:

"A special lien is one which the holder thereof can enforce only as a security for the performance of a particular act or obligation, and of such obligations as may be incidental thereto. Where the holder of a special lien is compelled to satisfy a prior lien for his own protection, he may enforce payment of the amount so paid by him as a part of the claim for which his own lien exists."

Counsel, however, overlook the provisions of section 3840, Rev. Laws 1910, which is as follows:

"One who has a lien inferior to another upon the same property has a right first to redeem the property in the same manner as its owner might from the superior lien; and, second, to be subrogated to all the benefits of the superior lien when necessary for the protection of his interests, upon satisfying the claim secured thereby."

Under the familiar rule of statutory construction all sections of the statutes must be construed together and so interpreted, if possible, as to make all effective. There is no inconsistency in our minds in these two sections of our statutes. Section 3825, supra, authorizes a lienholder to make payment of a prior lien to protect his lien and tack the amount so paid onto the amount secured by his lien. Section 3840 authorizes an inferior lienholder to redeem from a superior lien and to be subrogated to all the rights of the superior lien when necessary for the protection of his interests. The provisions of section 3825 were substantially incorporated into the mortgage by the provisions which we have above considered, and we are forced to conclude that the provision authorizing the lienholder to satisfy a superior lien, and have the amount so paid in satisfaction secured by his lien, is not inconsistent with his right to redeem from the superior lien, and to be subrogated to such superior lien for the protection of his interests. We therefore say that the provisions of section 3825, supra, do not deprive plaintiffs of the right of subrogation.

It is next contended on behalf of defendants that plaintiffs elected to avail themselves of the provisions of their mortgage by the filing of the first and second petitions setting up the execution of the third mortgage, the payment of the sums upon the first mortgage and the taxes, and praying that the lien of such third mortgage be extended to secure the sums so paid; and it is urged that, having so elected, they are now estop-

ped from demanding in their second amended petition to be subrogated to the liens satisfied by them. Counsel for defendants, however, set up no elements of estoppel to bar the plaintiffs from prosecuting their remedy by subrogation. In their petition and first amended petition the Baum Building Company was made the sole defendant. The relief sought in this petition was the appointment of a receiver for the Baum building and the foreclosure of plaintiffs' third mortgage. This evidently was the only relief to which they were entitled as against the Baum Building Company. When plaintiffs made other parties defendant against whom they could claim additional relief, they properly pleaded their right to be subrogated to the liens satisfied by them. We know of no authority, and counsel have cited us none, which would preclude the plaintiffs from seeking against defendants, properly made parties after the commencement of the action, other and different relief than that which we would have been entitled as against the original defendant. There appear no elements of estoppel in this case, and we feel convinced that plaintiffs were not precluded from seeking in their second amended petition relief by subrogation.

It is next contended by counsel for defendants that to grant plaintiffs the relief sought would override the superior equity of the defendants. It is urged that by a payment of the taxes and the installments due upon the first mortgage the plaintiffs precluded the defendants from exercising their option to foreclose their lien, and thereby delayed defendants for a considerable period in enforcing their rights. Counsel rely upon Merchants' Trust Co. v. Hart, supra, in support of their contention. It is there held that the rights of mortgage bondholders would be injuriously affected by permitting the county treasurer, who had received checks in payment of taxes, the amount of which he had paid over to the state, county, or city, to be subrogated to the lien of such taxes upon default in the payment of such checks, because a failure to pay such taxes when due constituted a default, and authorized the mortgaged property to be appropriated to the satisfaction of the mortgage debt. In that case, however, the county treasurer, in the payment of the taxes to which he claimed the right of subrogation, was clearly a volunteer. In the instant case the notes secured by the first mortgage were executed by the defendants and they were liable for the payment of the same. It is true, as between the Baum Building Company and the defendants, the defendants were only sureties; but so far

as the first mortgagee, the Union Trust Company, was concerned, the defendants were primarily liable for the payment of this debt. It was their duty to see to it that the same was paid when due. The same is true of the taxes, since the taxes were liens not only upon the leasehold, but upon the fee, and the property for the defendants was primarily bound for the payment of the taxes. The payments made by the plaintiffs inured to the benefit of the defendants, and discharged obligations for which they and their property were primarily bound. The plaintiffs, not being volunteers, we are satisfied have a superior equity to be reimbursed for the funds which they have expended for the benefit of the estate of the defendants.

One other contention remains to be considered with reference to the payment made upon the first mortgage. It is contended that plaintiffs are not entitled to subrogation for the reason that they did not discharge the entire debt. While it is generally true that one will only be entitled to subrogation to a lien which he has fully satisfied, yet the rule is subject to the qualification that, when the indebtedness secured by a prior lien is payable in installments, one may, upon payment of an installment for protection of his own security, be subrogated, as against the mortgagor, to the rights of the holder of the first mortgage, subject to any balance due upon the prior lien. 37 Cyc. 465; 27 Am. & Eng. Enc. of Law, 249; Watkins Land Co. v. Williams, 63 Kan. 30, 64 Pac. 976; New Jersey Building, Loan & Investment Co. v. Cumberland Land Investment Co., 53 N. J. Eq. 644, 33 Atl. 964; Skinkle v. Huffman, 52 Neb. 20, 71 N. W. 1004.

In the instant case the defendants were the mortgagors executing the first mortgage, and plaintiffs, having paid installments of principal and interest for the protection of their lien, would be entitled, as against them, to be subrogated to the lien of such prior mortgage for the amount so paid. The judgment of the trial court should be reversed, and the cause remanded with directions to enter judgment for the plaintiffs in accord with the views here expressed.

By the Court: It is so ordered.