## RODMAN ET AL. V. SANDERS, AD.

1. **VENDOR'S LIEN:** *Conventional subrogation to.*

   The voluntary payment by a stranger of a debt due to the vendor of land, and which is a charge upon it, extinguishes the debt and the lien. And the mere lender of money, which the vendee applies to payment of the purchase money for land, is not substituted to the rights and remedies of the vendor. But one who pays the debt at the instance of the debtor, is not a volunteer; and if at the time of payment he manifests an intention to keep the lien alive for his protection, and for this purpose retains the purchase note and deed in his possession, with the assent of the purchaser, he will be deemed in equity a purchaser of the incumbrance and substituted to the rights and remedies of the creditor.

2. **STATUTE OF LIMITATIONS:** *Against assignee of vendor's lien.*

   Where a vendor of land would not be barred of foreclosure for the purchase money, a party who has acquired his rights will not be barred.

3. **TAX TITLE:** *Purchase by tenant.*

   One who is in possession and receiving the rents and profits of land cannot acquire a title to it by a purchase for taxes.

APPEAL from *White* Circuit Court in Chancery.

Hon. M. T. SANDERS, Circuit Judge.

*W. R. Coody* for appellants.

1.    There was no resulting trust, as the money was not advanced at the time of the purchase, but afterwards. (*29 Ark., 630; 2 Paige, 238.*) The payment could only have been a lien or advancement. *41 Ark., 301; 10 Paige, 626; 6 Blackf., 195.*

2.    There was no subrogation, as the debt was paid and *extinguished,* a deed made, and no assignment of the note or lien. The father was a mere volunteer for the benefit of the son. (*3 Paige, 122; 7 Md., 164; 2 Brock., 224; 21 Barb., 262; 1 Sandf., 384; 1 Const., 586; 8 Leigh, 588, 602;*

*16 Ark., 657.*) Payment extinguishes the debt and destroys all possibility of subrogation. (*25 Ala., 250; 18 Vt., 77, 85; Dev. & Bat. (N. C.) Eq., 366.*) See also *39 Ark., 535; 25 Ark., 132; 33 Ib., 346.*

3. But if there was a *conventional* subrogation, the claim is barred by limitation. (*34 Ark., 312; 29 Ib., 591.*) Adverse possession for seven years bars all right to foreclose, and gives a complete title. (*34 Ark., 547; Ib., 534, 598.*

4. Under our system of recording deeds and mortgages there is no such thing as an equitable mortgage by deposit of title deeds. *1 Jones on Mort., sec. 179; 8 B. Mon. 435–7; 2 Story Eq., sec. 1020; Gantt's Dig., secs. 4287–8; 20 Ark., 18; 16 Ib., 671.*

5. Rodman was an innocent purchaser, but if he was aware of all the facts, yet appellee as the representative of P. W., is estopped by the acts of his intestate. *39 Ark., 132–3; 38 Ib., 465; 11 Ib., 249; 37 Ib., 47.*

*J. W. House* for appellee.

The evidence shows that no advancement was intended; that the money was paid at the son's request, and that the father held the note and deed at his request as a security for the payment of the amount, and looked to the land as his security. This did not make the father a volunteer, but by explicit agreement he was subrogated to all the rights of the vendor. He held the deed and note with the understanding that it was a lien on the land, and that such was the legal effect of it.

The doctrine of equitable mortgages by deposit of title deeds has been recognized in nearly all the States. (*3 Sandf. Chy., 9; 23 N. Y., 561; 24 Me., 311; 16 Wis., 307; 4 R. I., 512; 16 Ga., 469; 2 Hill, S. C., 166, 170.*) It does not come within the operation of the statute of frauds. *1 Bro. C. C., 269; 5 Wheat, 277; 2 Washb. R. P., 82.*

The statute bar of seven years never attached in this ·case. None of the parties held adversely for that period. Nor was Rodman an innocent purchaser; he was familiar with the entire transaction.

SMITH, J. In the year 1871 J. M. Williams, a citizen of Mississippi, purchased 240 acres of land in this State, and received a bond conditioned to convey the title to ·him upon payment of the price, $2,400. This being all paid ·except a note for $1,000, which matured December 1, 1872, the vendor brought suit for foreclosure of his lien. And the vendee, being unable to pay, appealed to his father, P. W. Williams, who also resided in Mississippi, for assist-·ance. The father came to Arkansas, bringing the bond for title, paid off the incumbrance, using $965 of his own money for that purpose, and received the outstanding pur-·chase note, together with a deed to his son. The circum-·stances and the conduct of the parties repel the presump-tion that this was intended as a gift or advancement to the ·son. The deed was not placed upon record, nor was it de-livered to the son; but the father kept both deed and note ·in his possession until his death in 1878, and evidently ·considered that he held a security for the repayment of the money he had advanced. He took charge of the land, put his son-in-law, Rodman, who lived in the vicinity, in pos-session and took care that the annual taxes were regu-larly paid. Rodman held possession until December, 1874, when, by direction of P. W. Williams, he surrendered possession to another son of his, Thomas R. Williams. Thomas R., either before he entered or afterwards, made a contract with his brother, J. M., to purchase his interest in the lands. He held until 1879, when he sold out to Rodman, who was acquainted with all of the facts. In 1880 Rodman received from J. M. Williams a conveyance

Rodman et al. v. Sanders, Ad.

for 144 acres of the land, that being supposed to be the extent of his interest. And he afterwards acquired a tax title to the remaining 96 acres.

The present bill was filed in 1882, by the administrator of P. W. Williams, against Rodman and J. M. Williams, to subject the land to sale for the satisfaction of so much of the purchase debt, with interest, as the deceased discharged. The defendants relied upon adverse possession under the statute of limitations and the title papers above mentioned. The decree was for the plaintiff.

The voluntary payment by a stranger of a debt due to the vendor of real estate, and which is a charge upon it, extinguishes the debt and of course the lien also. (*Nichol v. Dunn, 25 Ark., 129.*) And the mere lender of money, which the borrower applies in part payment of the purchase money of land, is not substituted to the rights and remedies of the vendor. (*Griffin v. Proctor, 14 Bush., 571.*) But one who pays a debt at the instance of the debtor is not a volunteer; and if, when he made the payment, he manifested an intention to keep the prior lien alive for his protection, he will be deemed in equity a purchaser of the incumbrance. *Sheldon on Subrogation, secs. 243, 247.*

*1. VENDOR'S LIEN: Conventional subrogation to.*

When P. W. Williams paid off this charge upon his son's land, he took no formal assignment of the debt. But he expected to be substituted to the place of the creditor. This is evident from the fact that he retained the purchase note and deed in his possession and that he always looked to the land for reimbursement. This is not, however, sufficient in itself to give a right to subrogation. But the proof shows that when he returned to Mississippi, his son told him to keep the papers until the money was refunded. From the previous request made by the son that the father should relieve the land from the incumbrance, and his subsequent assent that the father

should hold the papers until he was reimbursed, we may infer a prior agreement between the parties that the father should be substituted to the securities and remedies of the creditor. And this presents the ordinary case of a conventional subrogation.

2. STATUTE OF LIMITATIONS: Against assignee of vendor.

Now, the original vendor, if the payment had not been made, and he were suing for foreclosure, would not be barred, according to the doctrine of *Ringo v. Woodruff, 43 Ark., 469*, and *Whittington v. Flint, Ib., 504*. Consequently P. W. Williams, who advanced the money to pay off his debt, and who has exactly the same rights that the vendor would have had but for such payment, is also not barred. As against J. M. Williams and all claiming under or through him, with no greater rights or equities than he had, the debt itself and the lien, though extinguished for all other purposes, are considered as still subsisting for the benefit of P. W. Williams, the same as if the note had been actually assigned to him and no deed had been made. *Chaffe v. Oliver, 39 Ark., 531; Robinson v. Leavitt, 7 N. H., 99.*

3. TAX TITLE: Purchase by tenant.

Of the tax deed, it is only necessary to say that Rodman, being in possession of the lands, and in receipt of the rents and profits, could acquire no title by a purchase at tax sale. It only operated as a payment of the taxes. *Guinn v. McCauley, 32 Ark., 97, and cases cited.*

Let the decree be affirmed.