STEPHENSON *v.* GRANT.

Opinion delivered May 18, 1925.

1. SUBROGATION—ADVANCE OF MONEY TO DISCHARGE VENDOR'S LIEN.— One who advances money to pay off an incumbrance on land, such as a vendor's lien, at the owner's instance is not a volunteer.

2. SUBROGATION—PRIOR LIEN—CULPABLE NEGLIGENCE.—The agent of a person advancing money to the owner of land to discharge a vendor's lien, who inquired of the owner whether any other liens existed against the lands and received a negative reply was not chargeable with culpable negligence in not discovering the existence of a mortgage lien against such property which an examination of the records would have disclosed.

3. SUBROGATION—ADVANCING MONEY TO DISCHARGE LIEN.—One who advances money to pay off prior incumbrance on realty, at the instance either of the owner of the property or the holder of the incumbrance, either on the express understanding, or under circumstances from which an understanding, will be implied, that the advance made is to be secured by a first lien on the property is not a mere volunteer; and in the event the new security is for any reason not a first lien on the property, the holder of such security, if not chargeable with palpable and inexcusable neglect, will be subrogated to the rights of the prior incumbrancer under the security held by him.

Appeal from Chicot Chancery Court; *E. G. Hammock,* Chancellor; affirmed.

*Streett & Burnside,* for appellant.

*Cook & Trice* and *W. W. Grubbs,* for appellee.

HUMPHREYS, J.   This is an appeal from a decree of the chancery court of Chicot County wherein Mrs. E. P. Gaddis was subrogated to Friedlander & Oliven Company's lien for the balance of the purchase money, amounting to $452.46, on a sale of a certain forty-acre tract of land by it to Turner Grant, and for taxes she had paid on the land in the sum of $85.31.   The correctness of the decree allowing Mrs. Gaddis to be subrogated to the rights of Friedlander & Oliven Company to the extent of its vendor's lien is challenged, but not for taxes paid by her on the land.

Friedlander & Oliven Company sold and conveyed the land to Turner Grant on March 2, 1918, reserving

a lien in the deed to secure the balance of the purchase money, evidenced by four promissory notes in the sum of $137.50, bearing interest at the rate of 6 per cent. per annum from date until paid, due respectively on the first day of December in the years 1918, 1919, 1920, and 1921. On the first day of April, 1919, Turner Grant and his wife executed a mortgage on the land to W. H. Stephenson to secure an indebtedness to him of $400, evidenced by a promissory note in said sum, due and payable on November 1, 1919, and to secure future advances to them, subject to Friedlander & Oliven Company's lien for the balance of the purchase money. Turner Grant paid one of the lien notes, and afterwards applied to E. L. Ross, cashier of the Merchants' & Planters' Bank of Eudora, Arkansas, for a loan of $1,000 with which to pay the others, and to build a house upon the land. The bank did not want to make a long-time loan, so the cashier agreed to take the loan for Mrs. Gaddis, whom he represented, with the understanding that the lien notes should be paid out of the loan and the lien released, having been informed by Turner Grant and believing that the notes for the purchase money constituted the only lien against the land. Turner Grant then inquired of Mr. Connerly, Friedlander & Oliven Company's local agent, whether the bank would have the first lien if he borrowed the money from it to pay the vendor's lien notes, and was informed that it would, as the notes would be assigned to the party who loaned him the money to pay off the lien. Thereafter he requested Connerly to procure the lien notes and a release of the lien from Friedlander & Oliven Company. Turner Grant and his wife then executed four notes for $250 each to Mrs. Gaddis, and secured same by a mortgage on the land. When the notes and a release were procured, the release deed and mortgage to Mrs. Gaddis were simultaneously filed of record, and the following notation was made on the face of the three Friedlander & Oliven Company's notes, viz:

"Paid 10-16-1919, by Mrs. E. P. Gaddis."

The duplicate deposit slip given to Turner Grant from Mrs. Gaddis is as follows:

"Loan ..................................................................................$1000.00
Less F. Oliven note ......................................................  452.46

                                                                                    $547.54
Less'interest (should be insurance)............   81.78

Recording fee, revenue stamps and mtg.
fees ...................................................................................   7.75

                                                                                    $458.01."

There is a dispute in the testimony as to what disposition was made of the Friedlander & Oliven notes after Mr. Ross made the notation quoted above on the face of the notes. Mr. Ross testified that, according to his recollection, he filed them away with the notes and mortgage to Mrs. Gaddis. Turner Grant testified that the three notes were turned over to him by Mr. Ross. However, the following question and answer appear in his testimony:

"Q. Now, when did you recall that Mr. Ross gave you these three notes? A. Now, Mr. Grubbs, if I make no great mistake, it really seems to me that these notes were turned over to me when this loan was closed."

Mr. Ross testified that it was his understanding that Mrs. Gaddis was getting the first lien on the forty-acre tract of land when the loan was made, and, while Turner Grant testified that there was no contract or understanding about it before or at the time the loan was made, the following question and answer appear in the testimony:

"Q. You said in your cross-examination that you intended Mr. Ross to have the same rights that Friedlander & Oliven Co. had. Did you intend Mr. Ross to have any greater rights than Mr. Stephenson? Which was first, the one to Mr. Ross or the one to Mr. Stephenson? A. The one to Mr. Ross. The Friedlander &

Oliven Company was ahead of Mr. Stephenson. Mr. Stephenson would have second mortgage.''

The mortgage to W. H. Stephenson was on record when Turner Grant and wife executed the mortgage for $1,000 to Mrs. Gaddis, but neither she nor her agent actually knew of the existence of the Stephenson mortgage. At the time Turner Grant applied to Mr. Ross for the loan, he asked him whether the Friedlander & Oliven Company's loan was the only lien on the land, and Grant informed him that it was.

Appellant insists that, because there was no express agreement that Mrs. Gaddis should be subrogated to the rights of Friedlander & Oliven Company when she advanced the money to pay the lien, and because the lien of Friedlander & Oliven Company was released instead of being assigned to her, she is not entitled in equity to be subrogated to the company's rights. Mrs. Gaddis was not a volunteer. *Rodman* v. *Sanders*, 44 Ark. 504. She was requested by the debtor to pay the vendor's lien, and it is fairly inferable from all the facts that she, through her agent, and Turner Grant intended at the time that she should have the first lien upon the land to the extent of the vendor's lien she was to pay. Her agent was not censurably negligent, for he asked Turner Grant whether Friedlander & Oliven Company's lien was the only lien against the land, and received information from him that it was. It is true that he could have discovered Stephenson's mortgage, had he gone to the record, but, in view of the fact that he made inquiry as to whether there were other liens, culpable negligence cannot be charged to him. Words & Phrases, Second Series, p. 1174. Stephenson's rights were not prejudiced by the decree allowing Mrs. Gaddis to be subrogated to the rights of Friedlander & Oliven Company. Stephenson only had a mortgage subject to its lien for the purchase money, and there is no showing in the evidence that he furnished more to Turner under the ''future advance'' clause contained in the mortgage than

he otherwise might have done had the vendor's lien not been released of record. In effect, his condition was. improved by the loan made by Mrs. Gaddis to Turner Grant, as almost one-half the money was used to make valuable improvements upon the land for which she was not given a first lien in the decree. These improvements enhanced the value of Stephenson's security.

The rule of law applicable to cases of this kind is well stated in a foot-note on page 473 of 37 Cyc. It is as follows: "One who advances money to pay off an incumbrance on realty, at the instance either of the owner of the property or the holder of the incumbrance, either on the express understanding or under circumstances from which an understanding will be implied, that the advance made is to be secured by a first lien on the property, is not a mere volunteer; and, in the event the new security is, for any reason, not a first lien on the property, the holder of such security, if not chargeable with culpable and inexcusable neglect, will be subrogated to the rights of the prior incumbrancer under the security held by him, and to this end equity will set aside a cancellation of such security, and revive the same for his benefit."

In discussing the equitable doctrine of subrogation, it is said in 37 Cyc. p. 365, that "its basis is a doing of complete, essential, and perfect justice between all the parties without regard to form, and its object is the prevention of injustice;" and, at page 371, that "generally, where it is equitable that a person, not a mere stranger, intermeddler, or volunteer, furnishing money to pay a debt should be substituted for or in the place of the creditor, such person will be so substituted."

We think the facts in the instant case are sufficiently similar to the facts in the case of *Southern Cotton Oil Company* v. *Napoleon Hill Cotton Company,* 108 Ark. 555, for it to be ruled by that case. We also cite the case of *Blevins* v. *Rogers,* 32 Ark. 258, in support of the conclusion reached by us.

No error appearing, the decree is affirmed.