Cooper *v.* Home Owners' Loan Corporation.

4-5382                                    126 S. W. 2d. 112

Opinion delivered February 20, 1939.

*Malcolm Garner* and *John L. Sullivan,* for appellant.

*Sam A. Rorex, Eugene A. Matthews, S. Lasker Ehrman* and *Herschell Bricker,* for appellee.

Holt, J. Appellant brings this appeal from an adverse ruling of the Pulaski chancery court. The facts as presented by record, substantially, are: On May 4, 1932, appellant, together with her then husband, John D. Cooper, purchased as tenants by the entirety lot 22 in block 2 of Fleming & Bradford's Addition to the city of Little Rock, Arkansas, from S. M. Dent, Trustee of Home Realty Corporation, bankrupt. The consideration was $1,700, of which $800 was paid in cash and the balance was represented by a lien note in the principal sum of $900 with interest at 7 per cent. and payable in monthly installments of $25. The deed retained a vendor's lien to secure the unpaid purchase money. The monthly payments were made to and including June, 1933, and a payment of $15 was made in July, 1933. On December 15, 1933, appellant was committed to the Arkansas State Hospital for Nervous Diseases and was an inmate on

April 6, 1934. On this latter date, John D. Cooper, husband of appellant, secured a loan from the Home Owners' Loan Corporation, appellee, to refinance the indebtedness in the sum of $745.91 due S. M. Dent, trustee of the Home Realty Corporation, and in evidence thereof executed a note in the sum of $842.62, with interest thereon at 5 per cent. and to secure the payment thereof executed a mortgage to appellee to cover the above described property. The name Mary Ella Cooper is also signed to the note and mortgage in question.

It is agreed, however, that her name on the instruments in question cannot bind her for the reason that she was insane at the time of their execution. The appellee delivered to S. M. Dent, trustee, bonds of the face value of $725, with accrued interest of $7.61, in full payment of the original lien held by Dent, and a check in the sum of $13.30. The balance of $96.71 consisted of taxes, insurance, abstract bill, and incidental expenses in connection with the closing of the loan. At the time appellee paid the amount due Dent on his vendor's lien, Dent's right to foreclose his lien had matured. Subsequent thereto appellant, Mary Cooper, was declared sane and default having been made in the payment due the Home Owners' Loan Corporation, foreclosure was begun in the Pulaski chancery court. Neither the appellant nor her husband paid any taxes on the land from the date of the execution of the mortgage to Home Owners' Loan Corporation. The trial court held that the mortgage in favor of appellee was void as to appellant, Mary Cooper, but that it was in full force and effect as to John D. Cooper, former husband of appellant, and decreed an equitable subrogation in favor of the Home Owners' Loan Corporation for the amount due it together with taxes paid subsequent to the execution of the mortgage. The sale was held under the terms of the decree and property purchased by appellee. The court confirmed the sale, but subsequently set aside the confirmation.

Upon this state of the record, appellant earnestly insists here that the appellee, Home Owners' Loan Corporation, acted as a mere volunteer in paying the ven-

dor's lien held by S. M. Dent, and thereby acquired no right or interest in the property in question by virtue of having satisfied the vendor's lien held by S. M. Dent, trustee, or under the note and mortgage executed to it by John D. Cooper, husband of appellant. To this contention we cannot agree. It is our view that the only question involved on this appeal is whether the Home Owners' Loan Corporation, appellee, is entitled to equitable subrogation to the rights of the original lien holder, S. M. Dent, trustee, and to the right to foreclose its lien on the property.

We are of the opinion under the facts as reflected by this record that the Home Owners' Loan Corporation is entitled to subrogation and does have the right to foreclose its lien on the property. The undisputed facts show that on May 4, 1932, appellant and her husband acquired by deed an estate by the entirety in the property in question from S. M. Dent, trustee in bankruptcy for the Home Realty Corporation, and that Dent retained a vendor's lien for the unpaid purchase money. At this time appellant was sane, and there can be no question as to the validity of this original lien held by Dent. The appellee, Home Owners' Loan Corporation, was formed for the purpose of relieving distressed home owners by amortization and refinancing of existing indebtedness. In *Pennell* v. *Home Owners' Loan Corporation*, 21 F. Sup. 497, the court said: "The Home Owners' Loan Corporation was created by authority of the act of June 13, 1933, as amended, 12 USCA, § 1461 *et seq.*, to engage in the business of loaning money and refinancing mortgages on real estate, a business that private corporations and individuals commonly engage in. The principal purpose of the act, as was recited therein, was to provide emergency relief with respect to home mortgage indebtedness, to refinance home mortgages, and to extend relief to owners of homes occupied by those who were unable to amortize their debts elsewhere." John D. Cooper, husband of appellant at the time, negotiated with appellee and secured the loan in question in the sum of $842.62, and this money was used

in payment of the original vendor's lien held by S. M. Dent, as trustee for the Home Realty Corporation, and since said deed to Cooper and wife (appellant) retained a lien on said property, we hold that appellee is clearly entitled to be subrogated to the rights of Dent under said lien and to a foreclosure thereof. One who liquidates a lien on behalf of another under such circumstances as reflected by this record cannot be said to be a volunteer.

Our court is committed to the rule that one who pays a debt at the instance of the debtor is not a volunteer. If when the payment was made he manifested an intention to keep the prior lien alive for his protection, he will be deemed in equity a purchaser of the incumbrance. This court in *Rodman, et al,* v. *Sanders, Admr.,* 44 Ark. 504, laid down the rule that one who advances money to pay off an incumbrance on land such as a vendor's lien at the owner's instance is not a volunteer. In *Stephenson* v. *Grant,* 168 Ark. 927, 271 S. W. 974, according to the facts there were two liens of record when the mortgage was executed by the owner to Mrs. Gaddis. Frielander & Oliven Company had sold a 40-acre tract to Turner Grant on March 2, 1918, reserving a lien on the land to secure the balance of the purchase money. On the 1st day of April, 1919, Grant and his wife executed a second mortgage to W. H. Stephenson to secure an indebtedness in the sum of $400, evidenced by a promissory note in said sum, and to secure future advances, subject to Frielander & Oliven Company's lien for the balance of the purchase money. Grant made application to the cashier of the Merchants & Planters Bank of Eudora for a loan of $1,000 with which to pay the existing liens and to build a house on the land. The bank did not want to make a long time loan, and the cashier of the bank secured a loan for Grant with Mrs. Gaddis as mortgagee. Grant and his wife executed four notes in the sum of $250 each, and to secure the same executed a mortgage on the land to Mrs. Gaddis. The mortgage was recorded, and a release deed was executed by Frielander & Oliven Company and placed of record. The cashier of the bank assured Mrs. Gaddis she would have a first lien on the land, and tes-

tified that it was his understanding that Mrs. Gaddis was getting a first lien on the land.

Notwithstanding the fact that the Stephenson mortgage was of record, the Chicot chancery court decreed a subrogation in favor of Mrs. Gaddis to the extent of the first lien of Frielander & Oliven Company and for taxes subsequently paid, holding that Stephenson's rights were not prejudiced by such subrogation. We quote from *Stephenson* v. *Grant, supra*, as follows: ''The rule of law applicable to cases of this kind is well stated in a foot-note on page 473 of 37 Cyc. It is as follows: 'One who advances money to pay off an incumbrance on realty, at the instance either of the owner of the property or the holder of the incumbrance, either on the express understanding or under circumstances from which an understanding will be implied, that the advance made is to be secured by a first lien on the property, is not a mere volunteer; and, in the event the new security is, for any reason, not a first lien on the property, the holder of such security, if not chargeable with culpable and inexcusable neglect, will be subrogated to the rights of the prior incumbrancer under the security held by him, and to this end equity will set aside a cancellation of such security, and revive the same for his benefit.' In discussing the equitable doctrine of subrogation, it is said in 37 Cyc., p. 365, that 'its basis is a doing of complete, essential, and perfect justice between all the parties without regard to form, and its object is the prevention of injustice;' and, at page 371, that 'generally, where it is equitable that a person, not a mere stranger, intermeddler, or volunteer, furnishing money to pay a debt should be substituted for and in the place of the creditor, such person will be so substituted.' '' In this case the court held that Mrs. Gaddis was not a volunteer and cited *Rodman, et al,* v. *Sanders, Adm., supra.* The principals of equitable subrogation are discussed at length in the case of *Marks, et al,* v. *Baum Building Co., et al,* 73 Okla. 264, 175 Pac. 818.

The doctrine of subrogation has been further discussed in the case of *Home Owners' Loan Corporation* v.

*Collins, et al,* 120 N. J. Eq. 266, 184 Atl. 621, as follows:
"Generally when the person advancing the money to pay
the old debt takes a new mortgage and the old lien is can-
celed, there is no subrogation, because the acceptance of
the new security evidences an agreement and an intention
by the new creditor to rely thereon rather than on the
old and because, upon the cancellation of the old lien,
nothing remains to be the object of subrogation. But
where, through fraud or mistake, the new security turns
out to be defective, there frequently arises a third kind
of subrogation. It does not depend upon the sub-
rogatee having been a surety or having had an interest
in the property to protect, and it does not depend
upon agreement that he would be subrogated to the
rights of the old creditor. It grows rather from an
agreement or understanding that he would obtain a se-
curity of a particular kind and from his failure, through
fraud or mistake, to obtain such security." In *Southern
Cotton Oil Company* v. *Napoleon Hill Cotton Company,*
108 Ark. 555, 158 S. W. 1082, 46 L. R. A. N. S. 1049,
this court quoted with approval *Rodman* v. *Sanders,
supra,* and said: "Subrogation, in its literal and equi-
table significance, is the demanding of something un-
der the right of another, to which right the claimant is
entitled for the purposes of justice to be substituted
in place of the original holder. Its phases are various,
but it preserves its characteristic features throughout.
It is the machinery by which equity of one man is worked
out through the legal rights of another. It rests upon
the maxim that no one shall be enriched by another's
loss, and may be invoked wherever justice and good con-
science demand its application in opposition to the tech-
nical rules of law, which liberate securities with the ex-
tinguishment of the original debt.

This equity arises when one not primarily bound to
pay a debt, or remove an incumbrance, nevertheless does
so; either from his legal obligation, as in the case of a
surety, or to protect his own secondary right; or upon the
request of the original debtor, and upon the faith that, as
against the debtor, the person paying will have the same

sureties for reimbursement as the creditor had for payment. And this equity need not rest upon any formal contract or written instrument. Like the vendor's lien for purchase money, it is a creation of a court of equity from the circumstances.''

The theory of equitable assignment, as laid down by Pomeroy is: 'In general, when any person having a subsequent interest in the premises, and who is therefore entitled to redeem for the purpose of protecting such interest, and who is not the principal debtor, primarily and absolutely liable for the mortgage debt, pays off the mortgage, he thereby becomes an equitable assignee thereof, and may keep alive and enforce the lien so far as may be necessary in equity for his own benefit; he is subrogated to the rights of the mortgagee to the extent necessary for his own equitable protection. The doctrine is also justly extended, by analogy, to one who, having no previous interest, and being under no obligation, pays off the mortgage, or advances money for its payment, at the instance of a debtor party for his own benefit; such a person is in no true sense a mere stranger and volunteer.' Pomeroy, Equity Juris., vol. 3, § 1212.''

On this record we hold that the Home Owners' Loan Corporation, appellee, in good faith liquidated an existing valid lien on the property in question, was in no sense a volunteer in so doing, and is entitled to equitable subrogation and to foreclose its lien thus created.

We are of the opinion, however, that appellant should be given an opportunity to redeem this property by paying to appellee the amount due it under its lien, this right, however, not to extend beyond 90 days from the date of this opinion. As thus modified the judgment of the court below is affirmed.