Thomas E. ROBERTSON, Jr., As Trustee of the Farmer's Co-Op of Arkansas and Oklahoma, Inc.; Bob Reves; Frances Graham; Robert H. Gibbs, Individually; Robert H. Gibbs, as natural guardian of his minor children, Thomas A. Gibbs and Robert H. Gibbs, Jr.; and Robert H. Gibbs, as Trustee of the Muskogee Internal Medicine Group Profit Sharing Funds; and Bob Reves; Frances Graham; and Robert H. Gibbs as Class and Subclass Representatives, Plaintiffs,

v.

Jack E. WHITE; J.E.W., Inc.; Valley Feeds, Inc.; Gene Kuykendall and Fred Kuykendall, individually and d/b/a Kuykendall & Kuykendall a partnership; Oran Moody, Jr. and Michael O. Moody, individually and d/b/a Moody and Moody, a partnership; Arthur Young & Company; Harry C. Erwin; Billy Joe Cabaniss, Jr.; Joseph F. Drozal, Jr.; Charles M. Hanson; Hal Brewer; Truman O. Boatright; Hugh Winfrey, Jr.; M.V. Creech; Charles Bane; E.H. Pritchett, Jr.; Robert Plunkett; Ralph McClure; Jimmy Don Gooch; Jerry Metzger; W.J. Rimmer; Don Sebo; Joe Wayne Harris; James Willis; Dan Ray Core; Harold Davis; Jay Freeman; Jay Neal, Jr.; George Wagnon; Raymond (Jack) Clark; Carl Creekmore and Morril H. Harriman, Jr., individually and d/b/a Creekmore & Harriman, a partnership; E.J. Ball, Kenneth R. Mourton, and Stephen E. Adams, individually and d/b/a Ball, Mourton & Adams, a partnership; Kirit Goradia; Eddie Joe Smith; and John Does 1–20, Defendants.

Nos. 85–2044, 85–2096, 85–2155 and 85–2259.

United States District Court,
W.D. Arkansas,
Fort Smith Division.

Sept. 5, 1986.

See also, 635 F.Supp. 851.

Gary M. Elden, John R. McCambridge, Kevin Waite, Christopher J. Doherty, Isham, Lincoln & Beale, Daniel A. Edelman, Torrado & Edelman, Chicago, Ill., for plaintiff, Thomas E. Robertson, Jr., As Trustee of the Farmer's Co-op of Arkansas and Oklahoma.

Robert R. Cloar, Fort Smith, Ark., for intervening plaintiffs, Bob Reves; Frances Graham; Robert H. Gibbs, as Natural Guardian of His Minor Children, Thomas A. Gibbs and Robert H. Gibbs, Jr.; and Robert H. Gibbs, as Trustee of the Muskogee Internal Medicine Group Profit Sharing Funds; and Bob Reves; Frances Graham; and Robert H. Gibbs as Class and Subclass Representatives.

Carl Liggio, John Matson, New York City, for Arthur Young & Co., Harry C. Erwin, Billy Joe Cabaniss, Jr., Joseph F. Drozal, Jr., Charles M. Hanson.

James M. Roy, Jr., Roy & Lambert, Springdale, Ark., Michael H. Mashburn, Fayetteville, Ark., for Arthur Young & Co.

Fred H. Harrison, University of Arkansas, Little Rock, Ark., for W.J. Rimmer.

Fines F. Batchelor, Jr., Van Buren, Ark., for Truman O. Boatright, Hugh Winfrey, Jr., Jimmy Don Gooch, Ralph McClure, Joe Wayne Harris, James Willis, Dan Ray Core, Harold Davis, Jay Freeman.

Carl Creekmore, Morril H. Harriman, Jr., Van Buren, Ark., for Carl Creekmore and Morril H. Harriman, Jr., Ind. and d/b/a Creekmore & Harriman, a partnership.

Jerry Lee Canfield, Daily, West, Core, Coffman & Canfield, Fort Smith, Ark., for Citizens Bank & Trust Co.

Robert L. Jones, III, Jones, Gilbreath, Jackson & Moll, Fort Smith, Ark., for Gene Kuykendall and Fred Kuykendall, Ind. and d/b/a Kuykendall & Kuykendall, a partnership.

Thomas B. Pryor, Pryor, Robinson and Barry, Fort Smith, Ark., for Oran Moody, Jr. and Michael O. Moody, Ind. and d/b/a Moody and Moody, a partnership.

Eddie N. Christian, Christian & Beland, Fort Smith, Ark., for Jack E. White, J.E.W., Inc., Valley Feeds, Inc.

Jim Jones, Sallisaw, Okl., for M.V. Creech, Charles Bane, Jerry Metzger.

Jerry D. Pruitt, Pruitt & Hodnett, Fort Smith, Ark., for Hal Brewer.

Kenneth R. Mourton, Ball, Mourton and Adams, Fayetteville, Ark., for Ball, Mourton & Adams, a partnership.

Mark A. Grober, Sandlin, Payne & Grober, Muskogee, Okl., for Robert Plunkett.

Ronald D. Harrison, Harrison and Hewett, Fort Smith, Ark., for Kirit Goradia.

James B. Blair, Springdale, Ark., for E.J. Ball, Kenneth R. Mourton and Stephen E. Adams, Ind. and d/b/a Ball, Mourton & Adams.

James A. Arnold, II, Shaw, Ledbetter, Hornberger, Cogbill & Arnold, Fort Smith, Ark., for Jay Neal, Jr.

Gary D. Corum, Wilson, Engstrom, Corum & Dudley, Little Rock, Ark., for Harry Erwin.

E.E. Maglothin, Jr., Putman & Maglothin, Fayetteville, Ark., for Ball, Mourton & Adams.

C. Randy McNair, III, Asst. Atty. Gen., Little Rock, Ark., represents State employees.

Peter G. Kumpe, Annabelle Davis Clinton, Wright, Lindsey & Jennings, Little Rock, Ark., for Joe Wayne Harris, Jerry Metzger, Jay Neal, Jr., Hugh Winfrey, Jr., James Willis, George Wagnon, Don Sebo, Robert Plunkett, Ralph McClure, E.H. Pritchett, Jimmy Don Gooch, Harold Davis, M.V. Creech, Dan Ray Core, Raymond (Jack) Clark, Truman O. Boatright, Charles Bane, Eddie Joe Smith, Jay Freeman.

## MEMORANDUM OPINION

H. FRANKLIN WATERS, Chief Judge.

Plaintiffs have asked for a ruling, *in limine,* excluding *any* reference to a settlement agreement between them and the director defendants. These directors have made an "agreement in principle" with the trustee and the class. This agreement contains a provision whereby once the plaintiffs recover a "net" of $8.2 million, they will refund to International Insurance 50% of whatever they collect in excess of $8.2 million until International has obtained $5 million plus certain expenses. The plaintiffs insist that no potential witness will be able to benefit in any way from the settlement. Any money refunded *per* the "agreement in principle" must be solely for the benefit of International and not for any insured. The parties contemplate that this "agreement in principle" and all negotiations, drafts, and other related documents and evidence, are not to be admitted into evidence; if the court decides, *in limine,* that they may be admitted, then the agreement is void.

The Arthur Young defendants, joined by Ball and Mourton, argue not only that the settlement be revealed to the jury, but that International Insurance Company be named as a real party in interest, and aligned as a plaintiff. The defendants' theory is that because International stands to gain from a verdict, it is a "real party in interest" which should be named as a party.

In *Mason-Rust v. Laborers' International Union, Local 42,* 435 F.2d 939 (8th Cir.1970), the defendant was found liable for damages caused by its having called an illegal strike in violation of 29 U.S.C. § 187. The plaintiff was the general contractor under a cost-plus contract with the Army Corps of Engineers. Because of the strike, the project was delayed, and costs rose from an estimated $7.8 million to $22.5 million. Mason-Rust was reimbursed by the Army for the increased costs. The Union therefore argued that Mason-Rust had suffered no actual damages to its business as a result of the strike, and because federal law allowed recoveries only to parties "injured in [their] business or property" by an illegal strike, the Union demanded that the action be dismissed. The Union also argued that under the contract, the Army was the real party in interest, and should have prosecuted the action in its own name.

The Eighth Circuit held that the Army was not the real party in interest. It noted that the purpose of Rule 17(a) is " '... to enable the defendant to avail himself of

evidence and defenses that the defendant has against the real party in interest, and to assure him finality of judgment, and that he will be protected against another suit brought by the real party at interest on the same matter.' *Celanese Corp. v. John Clark Industries, Inc.*, 214 F.2d 551, 556 (5th Cir.1954); ...." The defendants in this case have identified none of these possibilities as likely to occur in the event that their suggestion be not acted upon.

The court of appeals also cited with approval Professor Moore's analysis of Rule 17's scope:

> 'Cases construing the real party in interest provision can be more easily understood if it is borne in mind that the true meaning of real party in interest may be summarized as follows: *An action shall be prosecuted in the name of the party who, by the substantive law, has the right sought to be enforced.* 3A J. Moore, Federal Practice ¶ 17.07 (2d Ed., 1969)....'

*Mason-Rust, supra,* at 944.

In contexts where state law constitutes the rule for decision, state law will also determine who possesses the original cause of action, as well as questions concerning its assignability. *Dubuque Stone Prod. Co. v. Fred L. Gray Co.*, 356 F.2d 718 (8th Cir.1966). A state's *procedural* definition of a "real party in interest" does not apply. Under Rule 17(a), a federal court is solely concerned with that portion of state law from which stems the specific right sought to be enforced. State law, for example, may provide that a particular plaintiff has a cause of action, but that the claim should be prosecuted in the name of another entity. A federal court will disregard that rule, and require the action to be brought in the name of the party holding the substantive right. The question of whose name an action shall be brought under is procedural, governed by federal rules.

Clearly, the rights sought to be enforced in this proceeding belong, if they exist, to the plaintiffs. The directors, and their insurer, International Insurance Company, are presently defending claims of negligence, fraud, securities claims, and R.I.C.O. claims brought against them by the trustee and the class of noteholders and members of the Co-op. That much is elementary.

The defendants appear to be suggesting that if International pays $6.75 millions in claims to the plaintiffs, under a procedure whereby it stands to get a "rebate" of fifty cents on every dollar collected beyond $8.2 million in verdicts and settlements, then International is in effect a subrogated party. This contention begs analysis.

Can it be said that the International Insurance Company, insurer for the directors, succeeds to any of the rights of its insureds against Arthur Young, so as to become a real party in interest in whose name the insureds' action must be prosecuted? That is, does International become a real party in interest because of a contract it has made *with the plaintiffs, after* the suit was filed? A distinction should be drawn between this situation and one where an insurer, by virtue of a pre-existing contract with its insured, giving it specified subrogation rights, asserts those rights *as a plaintiff* against a party who has damaged its client.

This is not a subrogation case, however. International does not claim through or under the rights of the directors. Its insureds do not have any positive rights against Arthur Young. It is true that they have crossclaimed for contribution, but under state law, that "substantive right" does not mature until such time as the directors pay more than their *pro rata* share of a judgment. *See Shelton v. Firestone Tire & Rubber Co.*, 281 Ark. 100, 103–104, 662 S.W.2d 473 (1983). That is, the directors have a hypothetical right not to have to pay more than they ought to, but that right is not *in esse*, and in the absence of a judgment, no one knows even the potential dimensions of that right. Strictly speaking, International has no subrogation right. Subrogation is the demanding of something under the right of another. *Cooper v. Home Owners Loan Corporation,* 197 Ark. 839, 126 S.W.2d 112 (1937). Interna-

tional will claim its rebate from the plaintiffs, not from or under the directors. Its demand will be made by virtue of a contract made after commencement of an action, and collateral to it, rather than because of a contract made before the events giving rise to the substantive claims occurred.

Can it be said, contrarily, that International is subrogated to the rights of the plaintiffs? Such an interpretation is superficially attractive. However, again, subrogation is the claiming of something from a third party under the right of another. International's rights arise from contract. If the contract is breached, it has no rights against Arthur Young. Rather, it must proceed against the trustee or the class.

Putting that point aside, if International is subrogated to, through, or under the rights of the plaintiffs, it is clear that it is a *partial* subrogee. The rule in Arkansas, followed in the federal courts, is that a partial subrogee is not a real party in interest in whose name an action must be brought. *McGeorge Construction Co. v. Mizell*, 216 Ark. 509, 226 S.W.2d 566 (1950).

The Arkansas courts conceive, and to an extent we agree, that a very great prejudice attends the presence or mention of insurance in a case. It has repeatedly been considered grounds for mistrial where the jury learns that a party is covered, wholly or partially, by insurance. *See Ben M. Hogan Co., Inc. v. Nichols*, 254 Ark. 771, 496 S.W.2d 404 (1973). Consequently, devices such as partial subrogation are used to "keep insurance out" of trials. In the ordinary run of cases, if a party has been totally indemnified by his insurer, the insurer will be deemed the real party in interest, at least in federal courts. *United States v. Aetna Cas. & Sur. Co.*, 338 U.S. 366, 70 S.Ct. 207, 94 L.Ed. 171 (1949). Yet, under state law, so-called "loan receipt" agreements, even those under which the insured is fully compensated for his loss, are not construed so as to make the insurer or third party a real party in interest. *Hand v. Northwestern Nat. Ins. Co.*, 255 Ark. 802, 502 S.W.2d 474 (1973); *Grayso-*

*nia N. and A.R. Co. v. Newberger Cotton Co.*, 170 Ark. 1039, 1056, 282 S.W. 975 (1926). We need not here decide whether state law in that case would be fully applied in this court under Rule 17(a). We note, however, the lengths to which the Arkansas courts will go in order to avoid the prejudice said to attend the needless mention of "insurance" in a trial, and observe that this policy is also honored to an extent in the federal courts. *See* Fed.R. Evid. 411.

The court cannot accept defendants' suggestion that under the agreement in principle, International is a real party in interest in these proceedings, any more than it would call a physician who rendered services on credit to an injured party an assignee or subrogee whose identity *as a plaintiff* must be made known to the jury. The physician's contract, like International's, is with the plaintiff, and cannot be enforced against the defendant. Defendants have failed to show that any of the dangers cited by Professor Moore which would result if International were not named as a party, will occur if this unusual step is not taken.

Furthermore, except for purposes of establishing or disestablishing diversity, there is no provision in the Rules for making a defendant a party plaintiff. One may involuntarily summon in a plaintiff, and make him a defendant, irrespective of diversity, but the court finds no authority for making a defendant a plaintiff because he has settled with a plaintiff under a "Mary Carter" rebate. In fact, in all the cases cited by both parties concerning so-called "Mary Carter agreements," there is not one to be found suggesting or authorizing such a procedure.

■ The court is not disposed needlessly to tell the jury that International Insurance Company might receive moneys from a verdict. Such a fact appears to have no relevance, nor does such a course of action appear to be justified procedurally. To be frank, the court would hazard that most settling parties in "Mary Carter" situations have their settlements paid for by insurance companies. If the *fact* of settlement

*as well as the identity* of parties standing to gain under the settlement were to be revealed, the practical effect would be to end Mary Carter agreements. This may or may not be a good idea. In Arkansas, such agreements are not contrary to public policy. *Firestone Tire & Rubber Co. v. Little,* 276 Ark. 511, 639 S.W.2d 726 (1982). For good or ill, they do have some utility, since by eliminating parties, one promotes the conservation of judicial resources. There is no point in permitting Mary Carter agreements on the one hand, and on the other, mangling the rules of procedure to assure that no one, but no one, would ever resort to one. The prejudice said to attend the perceived presence of insurance companies in an action is so great as to make it very unlikely that a plaintiff whose eye is fixed on trial strategy would ever enter such an agreement if he knew that the defendants would be permitted to refer to him as an "insurance company lawyer" rather than as an advocate for a sweet and horribly injured elderly lady. *See Firestone, supra.*

Having made these points, the court must confess that it cannot embrace plaintiffs' motion in its entirety. That is, the court does not believe that plaintiffs' variation on the classic "Mary Carter agreement" is so distinctive that they can be said to have made an honest woman of her. Plaintiffs suggest that their agreement is not secret; indeed, they have shared it with all the parties. But the court conceives that the vice of secrecy cited by both parties is not purged of its baneful effects simply because counsel and the court know it. Rather, if the jury is unaware that a party, nominally a defendant, has an interest in "jacking up the damages," then the trial conduct and advocacy of a settling party will be inexplicable. That is the central vice of secrecy in a Mary Carter agreement: that the jury will not be informed of relevant information which would explain the actions of witnesses, parties, and their attorneys.

Plaintiffs also proudly advance that the directors will not be kept in the case to make mischief with the remaining parties:

they will be loosed and trial time will be saved. No moneys rebated will find its way into the hands of a witness/director; therefore, the plaintiffs blandly assure us, no witness can possibly be biased by the Mary Carter agreement. As we say, however, in all likelihood, Mary Carter rebates go to insurance companies anyway; yet the courts believe that Mary Carter rebate provisions have the inherent power to put English on a witness's testimony.

Arthur Young suggests that plaintiffs' offer to dismiss the directors from the suit is disingenuous. Arthur Young has crossclaims against the directors, which directors will have to defend. These crossclaims go beyond pleas for contribution, and in Count V, Arthur Young alleges that the directors are responsible for damage to its business reputation through a pattern of racketeering activities. The legal sufficiency of this crossclaim was not put in issue by the directors' April 16, 1986, answer to it. Arthur Young also argues that the mere fact that directors personally have nothing to gain by the rebate provision is no guarantee that their testimony will not be tainted. The agreement in principle gives plaintiffs the right to take six-hour private statements from each director. In addition, Arthur Young argues that control of the litigation passes from the directors to the plaintiffs either under the agreement, or under side agreements made ancillary to it.

Plaintiffs have suggested that Rule 408 of the Federal Rules of Evidence supports their position, but otherwise adduce scant authority for their argument to exclude evidence of the settlement. Inasmuch as nearly $7 million appears to ride on this question (the agreement with International is made expressly conditional on the court's granting plaintiffs' motion), one would think that if persuasive and pertinent authority existed, it would have been cited. Perhaps, though, as plaintiffs have suggested, they really are reluctant to settle for the amount, and have only offered to do so in a civic-minded spirit. That is, perhaps plaintiffs' hearts weren't in the chore. On

the other hand, pertinent authority may not in fact exist.

Presumably, International would be very eager to conclude its role in this litigation, having caught plaintiffs in a generous and forgiving frame of mind, and its interests may deserve address. It has advanced the interesting argument that the rebate provision of the agreement in principle essentially memorializes by contract that which would occur anyway. This argument runs as follows: under the summary judgment decision whereby noteholders have been found eligible for up to $4.8 million from the directors, the directors will purchase the notes and become holders of them as against the Co-op in bankruptcy. To the extent that the money is paid by International to the plaintiffs, it will be eligible for a "rebate" in the bankruptcy court since it will then be a creditor of the Co-op.

We do not believe, however, that this argument presently avails the insurer. First, plaintiffs have asked that judgment be delayed. Consequently, the directors have not bought the notes, and therefore they are not now creditors of the Co-op, and under the agreement, may never be. Second, even though the agreement in principle attempts to replicate "what would happen" if the suit were tried to conclusion and the directors appeared in bankruptcy court seeking a distribution through liquidation or continued reorganization, the record is too sparse to admit that such a conclusion necessarily follows. Who is to say, on this record, that International/the directors are not *better* off under the agreement than they would be "by operation of law"? If International is "better off," might not the directors be inclined to favor the interests of their insurer rather than those of Arthur Young?

The point that the court is trying to make is this: under Rule 408, evidence relating to settlements and negotiations is ordinarily inadmissible, except to show bias or prejudice on the part of a witness. The court retains discretion under Rules 401 and 402 to cast a balance on a case-by-case basis. If the court were to surrender its discretion, *in limine*, on the bland assurances that no witness will be influenced by the agreement in principle, or on the unsubstantiated assurances that the agreement merely memorializes that which would "happen anyway," the court feels that it would surrender an important trial function in the interests of "expediency."

The court believes that language for *McShain v. Cessna*, 563 F.2d 632 (3rd Cir. 1977), is instructive. There, McShain sued Cessna Aviation and his airplane mechanic because his plane's landing gear collapsed upon landing. Before trial, he settled with his mechanic for $10.00 and for the ability to use the mechanic's expert witness, who was prepared to testify that the Cessna landing gear was inherently defective, and that the mechanic's work on the plane was not to blame. The trial court allowed Cessna to prove the terms of the settlement to show the expert's bias since the expert was employed by a sister corporation of the settling defendant. The court of appeals affirmed the trial court's ruling, saying:

> The fact that a sister corporation of Harmon's employer had been released from liability in exchange for Harmon's testimony cast doubt on Harmon's impartiality. Thus, as counsel for McShain appeared to contend at oral argument, McShain's claim is in reality that potential prejudice from admission outweighed the agreement's probative value.
>
> In evaluating such an argument, we must acknowledge that the trial judge's familiarity with the *tone* and *scope* of the evidence puts him in an advantageous position to gauge the *relative importance* of potential prejudice and probative value. Nonetheless, the balance required is not a pro forma one. A sensitive analysis of the need for the evidence as proof on a contested factual issue, of the prejudice which may eventuate from admission, and of the public policies involved, is in order before passing on such an objection. (emphasis added).

*Id.* at 635.

How can a court pay proper respect to the "tone" and "scope" of the evidence, its

relation to other evidence in the case, or assess the prejudice which may "eventuate," unless he has, in fact, heard and digested the testimony? It is impossible. In the court's opinion, if it were to do so, it would essentially surrender its discretion, and would probably be in a less advantageous position than a reviewing court to hear and determine the question. The reviewing court would at least have the benefit of a *record;* we have little other than suppositions and assurances, and they make a thin broth.

The court does not intend, as a general rule, to allow Arthur Young or any other defendant to prove that certain parties "settled out" unless the proof has a considerable tendency to prove the bias or prejudice of a witness. Take, for example, the case of *McInnis v. A.M.F., Inc.,* 765 F.2d 240 (1st Cir.1985). There plaintiff, a motorcyclist, had a wreck on what she considered an uncrashworthy bike. The series of unfortunate events was set in motion by the negligence of co-defendant Poirier, who turned in front of the plaintiff. Poirier settled for her policy limits ($60,000) and the case proceeded against A.M.F. alone. A.M.F. impeached *the plaintiff* with the settlement agreement arguing that plaintiff must have believed that Poirier caused all the damages to have demanded and received so much from her. The court of appeals reversed, saying:

> Defendants argue that they introduced the release to attack credibility rather than to disprove causation. Although this may have superficial appeal, we see it as an attempt to obfuscate the critical issue. The release could logically impeach McInnis's credibility only by tending to show that she brought suit against the defendants knowing all the while it was Mrs. Poirier and not the defendants who caused the injury to her leg. Such "impeachment" evidence is simply camouflaged causation evidence.

The court believes that this is an example of how nuanced a Rule 408 inquiry can become. The policy of Rule 408 is to encourage settlements. To this end, evidence of a settlement is not to be introduced to prove that plaintiff has already received all he has coming to him, or that the accident was somebody else's fault. There will be cases where the question will be close. The question has to be judged in the context of a developed and developing record, with the policies of Rule 408 in mind, and with a view towards giving all parties a fair trial.

To a certain extent, the plaintiff is master of the question. He can decide what evidence he needs from settling parties, and whether the evidence he adduces is on a contested fact issue. As a practical matter, he can invite or dispel a Rule 408 question, depending on how he decides to put his proof on. The court cannot very well issue a ruling *in limine* which would have the effect of immunizing a series of proofs which the plaintiff controls from otherwise proper impeachment.

In summary, the court has viewed the Mary Carter Agreement in Principle as involving a series of potential trial problems: (1) *Can* the parties even make such an agreement? (2) Will the fact that such an agreement has been made be revealed to the jury? (3) Should the presence of insurance be mentioned to the jury? (4) *Must* the insurance presence be exposed to the jury, as by making International a real party in interest and realigning it as a party plaintiff? On the basis of the record we have seen, and the arguments which have been made, we do not believe at this time that the presence of insurance *must* be exposed to the jury, and we are extremely doubtful that it ever should be. The court cannot make a binding declaration that insurance never be mentioned, since Rule 411 of the Federal Rules of Evidence allows such evidence to be admitted if relevant to a witness's bias or interest. The parties should be able to read the cases annotating that rule and compose an order of proof that avoids the problem, but the court cannot warrant that it will abide by any party's interpretation of the law, and cannot therefore issue an order *in limine* binding itself to a particular course

of action, when that course of action may, in a different context, be unfair or contrary to rules or law.

Similarly, whether the fact that a settlement has been reached will be mentioned to the jury depends on whether that fact has any relevance to show a person's bias. The court will not permit excursions into the area of "settlement" where the purpose is to show that somebody else was at fault, or that the plaintiff has already been fully compensated. We know that the judicial machinery depends on litigants' making their own assessment of the strengths and weaknesses of their positions, and pressing or abandoning their claims or negotiations correspondingly. If the rules of evidence permitted nonsettling parties promiscuously to inject settlement issues into a trial, then settlement negotiations in a multiparty case will soon become "all or nothing" propositions, which would mean that fewer settlements will be concluded. On the other hand, if the effect of a settlement were *never* to be allowed to be considered by a jury, parties holding conscientious defenses would be unduly pressured to settle since they would be unable to question the motivation behind the "changed tunes" sung by erstwhile codefendants. The court cannot accept suggestions that the agreement in principle is incapable of "putting English" on a given director unless the court is fully apprised of the context of the evidence. The record is too bare for such *ex cathedra* pronouncements.

Finally, the court is satisfied that the plaintiffs can make an agreement such as it proposes with the directors. Certainly, they could in state court. *Firestone Tire & Rubber Co., supra.* The defendants correctly point out that the agreement is not complete, and is subject to change. Who knows if the releases will correspond to the agreement? To the extent that the agreement varies in word or execution from the way it has been presented and the way we understand it, our thinking may change as well. We do not intend to be arbitrary about this; but we do insist that we remain what we are: an institution designed to resolve disputes conformably to law on a full record, with the flexibility necessary to make different decisions when different equities and facts present themselves.

The court is prepared to rule that the R.I.C.O. damages, if any, are to be trebled before they are reduced by credits. This appears sound in the law, is not seriously disputed, and needs no record to "flesh out" the various considerations. The proposition is soundly enough bottomed in the law, that the court can declare its intention (barring intervening authority) to apply the rule of *In re National Mortgage Equity Corporation Mortgage Pool Certificates Securities Litigation,* 636 F.Supp. 1138 (C.D.Calif.1986), as urged by plaintiffs.